## J. B. CASON v. THE STATE.

No. 3853. *Decided December 4, 1907.*

**1.—Murder—Charge of Court—Principal—Accomplice.**

Where upon trial for murder defendant claimed in his confession that another killed the deceased and gave the defendant a part of the money taken from deceased and threatened to kill defendant if he divulged; and the court charged that if deceased was killed by another than defendant to acquit him, there was no error that the court failed to charge the law of accomplices and principals; the court's charge being more favorable to the defendant than the evidence warranted.

**2.—Same—Continuance—Bill of Exceptions.**

Where no bill of exceptions was reserved to the overruling of the application for continuance, the matter cannot be considered on appeal.

**3.—Same—Change of Venue.**

Where upon trial for murder the testimony under the defendant's motion for change of venue did not show some prejudice against the defendant, but that the jurors simply stated that they believed whoever committed the alleged murder ought to be hanged; that defendant and deceased were strangers in the county, and that the jurors all swore that they could give defendant a fair and impartial trial, there was no error in refusing a change of venue.,

**4.—Same—Jury and Jury Law—Challenge for Cause.**

Where upon trial for murder the jurors simply stated on their voir dire that they had formed an opinion that the deceased had been murdered, and as to the punishment to be inflicted, but that they had no opinion as to the guilt or innocence of the defendant and that they could give him a fair and impartial trial, there was no cause for challenge.

**5.—Same—Evidence—Absence of Defendant—Confronted by Witness.**

Upon trial for murder, where the State attempted to show by a witness who had found some books and papers in a place where defendant had camped, that the name of deceased appeared on some of these papers; to which the court sustained an objection that the books and papers themselves were the best evidence; whereupon the State's attorney produced the books and papers and began to interrogate witness with reference to them, but in the meanwhile the defendant in charge of the sheriff had left the court room unobserved by either court or counsel, and shortly thereafter, when the court's attention was called to the incident, the court immediately instructed the jury that they could not consider any testimony offered in defendant's absence, and required the State's counsel to reintroduce the exact testimony he had introduced in defendant's absence; and there was no question as to the facts he did so reintroduce, to wit, the name of deceased. Held, there was no error and no violation of the constitutional or statutory provisions that defendant must be confronted by the witness and be present on the trial of felony. Distinguishing Bell v. State, 32 Texas Crim. Rep., 436.

Appeal from the District Court of Parker. Tried below before the Hon. J. W. 'Patterson.

Appeal from a conviction of murder in first degree; penalty, death.

The opinion states the case. ·

*Preston Martin* and *Sam Shadle,* for appellant.—On question of absence of defendant: Massey v. State, 31 Texas Crim. Rep., 371; Bell v. State, 32 Texas Crim. Rep., 436; Mapes v. State, 13 Texas Crim. App., 85; State v. Greer, 22 West Va., 800; 9 Am. & Eng. Ency. of Law, p. 657; Adams v. State, 28 Fla., 511; 21 Ency. of Pl. & Pr., p. 971; 6 Am. & Eng. Ency. of Law, 2d ed., p. 992 et seq.; Cooley Constitutional Limitation, 16th ed., p. 388; Underhill on Crim. Ev., p. 284, sec. 232. On question of exculpatory confession: Pratt v. State, 50 Texas Crim. Rep., 227; 16 Texas Ct. Rep., 599. On question of change of venue: Dobbs v. State, 51 Texas Crim. Rep., 629; 19 Texas Ct. Rep., 336. On question of challenge for cause: Rothchild v. State, 7 Texas Crim. App., 519; Ward v. State, 19 Texas Crim. App., 664; Burrell v. State, 18 Texas Crim. App., 713; Johnson v. State, 27 Texas Crim. App., 758. On question of charge on principals: Hampton v. State, 1 Texas Crim. App., 652.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death.

Appellant and deceased, L. F. McLemore, who resided in Kaufman County, left said county in January of this year, in a two-horse wagon. Deceased had on his person something between $500 and $1,000 when he left. Deceased and appellant were seen by different parties on the day preceding the night of the death of McLemore, and appellant was fully identified as being the party accompanying the deceased. Appellant and deceased camped about six miles west of Weatherford. ·Nothing further was seen of deceased until about two weeks thereafter when his body was found very badly decomposed, showing clear evidences of death by violence. The record does not show that anyone ever saw the wagon and team, or the deceased in Parker County in same, after the encampment, until his body was found as suggested, but the appellant was seen in Fort Worth, Tarrant County, about two days after he and deceased were seen camped in Parker County. At the time appellant was in Fort Worth he had in his possession the wagon and team of deceased, and some other articles which he disposed of. The body of deceased, as well as the wagon sold by appellant in Fort Worth, were thoroughly identified. Under proper warning appellant made the following confessions, in substance: That he and deceased camped at a place where the dead body of the deceased was found; that a man who gave his name as one Charlie Boington got in company with them that evening, and went with them to the camp, and that after they had pitched the camp that night

the deceased stepped off a little piece from the camp and that Boington followed him out there; he heard shots fired and that Boington killed the deceased, came back to the camp, threw down a wad of money, and told appellant there was his part, for him to take the team off and sell it, and if he ever told it he would be killed. The State never discovered any witness who saw a third party accompanying deceased.

The court in his charge to the jury submitted two degrees of murder; charged the law of circumstantial evidence, and further instructed the jury that if they found deceased was killed by Charlie Boington or by someone giving that name, or if they had a reasonable doubt from the evidence as to whether or not the deceased was killed by the said Boington, they would find the defendant not guilty. Appellant, in his motion for a new trial, complains that the court erred in failing to charge the law of accomplices and principals, and should also have told the jury that a man's presence while the felony is committed, if he takes no part in the commission of the crime, cannot be a principal in the commission of the crime; and appellant further insists that the court erred in not charging on defendant's confession, appellant insisting that the State having introduced the confession and the same containing exculpatory statements, the State should have introduced testimony to disprove the exculpatory statements. In view of the charge of the court telling the jury that if another than the defendant killed the deceased, or if the jury had a reasonable doubt thereof that another than appellant killed the deceased, or if they had a reasonable doubt thereof to acquit appellant, we think was a more favorable charge to appellant than the charge on the law of principals and accomplices would have been, since under said charge appellant may have been a principal, being present, aiding and abetting the said Boington in the commission of the crime. Under this statement of the law of principals appellant would be guilty of murder in the first degree, yet the court tells the jury that if Boington killed the deceased appellant would not be guilty of anything. This certainly was a more favorable charge to appellant than he was entitled to under the evidence in this case. Appellant has no bill of exceptions to the overruling of the application for continuance, hence same cannot be considered.

Appellant filed a motion which was accompanied by a pull of exceptions, for change of venue, predicating the motion on the ground that there exists against appellant so great a prejudice in Parker County that he cannot obtain a fair and impartial trial. The proof introduced on the motion for change of venue shows that appellant and deceased were both entire strangers casually passing through the county in a wagon. Whoever killed the deceased, as evidenced by this record, committed a cowardly murder for money. The proof introduced shows that the various jurors testified that they believed whoever did so ought to be hanged or deserved the death penalty, but they did not know anything about whether appellant was guilty and never heard of him. This, is in substance, the testimony introduced on this application for a change of venue. They

all conceded that they could give defendant a fair and impartial trial since they knew nothing about the question whether he was connected with it or not; never heard anyone say that appellant was connected with it. If appellant's insistence in this case be correct, then every atrocious crime perpetrated in the country would authorize a change of venue. There must be some prejudice against the defendant; that is, there must be a prejudgment of the fact that he, the defendant, is guilty before there can be evidence legally sufficient for a change of venue. At any rate, the jurors in this case, after a close reading of same, show that they had no bias or prejudice in favor of or against appellant, such as would influence their action in finding a verdict, but each and all swear that they could give defendant a fair and impartial trial under the evidence that might be introduced in the course thereof. We accordingly hold the court did not err in refusing the change of venue.

Appellant complained that the court erred in not sustaining the challenge for cause on the following jurors on the ground that they were disqualified, to wit: Cox, Collins, Turner and Johnson. These jurors testified on their voir dire that they had formed an opinion that deceased had been murdered, and that they had formed an opinion as to the punishment that should be inflicted, and may so have expressed such an opinion, but they stated positively that they had no opinion as to the guilt or innocence of the defendant, and that they could give the defendant a fair and impartial trial. This is a restatement, in substance, of what has heretofore been stated; that is, that mere prejudice or mere conclusion that an atrocious crime should be punished with the severest penalty of the law, would not be a basis or reason for change of venue, nor would it be a legal reason for supposing that a juror was disqualified. Furthermore, the bill fails to show that these jurors sat upon appellant's jury, therefore, the bill itself is defective. But be this as it may, we hold that said jurors were not disqualified.

The only other bill in the record complains of the following matter: During the trial of the case the State introduced one Chitister. This witness had testified that he resided in Fort Worth; saw the defendant at his wagon yard on the first and second day of February, 1907; that defendant was there with his wagon, camping outfit and plunder; that the defendant had sold same and had left, and shortly after the defendant left, he, the witness, found some papers and books in the different stalls in said yard. The county attorney asked the said witness what was on the said books and papers. Counsel for appellant objected on the ground that the books and papers were the best evidence. The court sustained the objection, whereupon the county attorney went to his office to get the books and papers. When the county attorney started to the office the defendant, in company with the sheriff, left the courtroom, and his absence was not noticed by the court or known to the prosecuting attorney, nor to defendant's counsel, and when the county attorney returned, the following testimony, in the absence of appellant, was introduced from the witness Chitister: "Q. I will ask you if you remember

this? A. Yes, sir. Q. What is it? A. It is a dictionary. Q. I will ask you what is on the inside of the leaf here? A. L. F. McLemore. Q. What is this on here? A. It is the same I believe. Q. L. F. McLemore? A. Yes, sir. Q. Where was that? A. It was under the manger in the stall in my wagon yard in Forth Worth. Q. It was under the manger? A. Yes, sir." Mr. Baldwin, one of appellant's counsel, at this juncture, stated to the court that defendant was not in the courtroom. The court: "Gentlemen of the Jury: You will disregard everything that was said; all the testimony that was introduced in the absence of the defendant." Defendant's counsel: "I want to reserve a bill of exceptions because of the testimony introduced in the absence of appellant." The court: "All right; gentlemen of the jury, everything that was done and said here after Mr. Wilson came in with this sack of papers and everything that was said, I will ask you to totally disregard. The defendant was out of the courtroom and the court did not know it, or the court would not have permitted the testimony to be introduced in his absence. The defendant's counsel or the sheriff or someone should have called the court's attention to it." The court: "Did the defendant's counsel know the defendant was out?" Mr. Shadle: "I did not know it." The court: "Did you, Mr. Martin?" Mr. Martin: "I saw him rise up but did not know he left the courtroom; knew he was not in his seat. I thought he went to get a drink." County Attorney: "I did not notice that he was out." After appellant returned to the courtroom the court again admonished the jury to totally disregard said testimony. The bill is approved with the following statement: "Neither the sheriff, the defendant nor his counsel requested or called attention of the court to the fact that the defendant wished to retire from the courtroom at the time the sheriff took him out at his request, and that the court did not notice or know of his absence until Mr. Baldwin, one of the attorneys for the State, called attention to the fact, and immediately the evidence was stopped until the defendant returned, when all of the evidence offered in the absence of the defendant was withdrawn from the jury, and the jury were admonished to disregard all evidence so offered in the absence of the defendant. The State then and there offered in the presence and hearing of the defendant the same evidence that was offered in his absence as hereinbefore set out; that while the defendant excepted to the taking and offering evidence in the absence of defendant after it was made known that he was absent, he did not by himslf or counsel request that the same be withdrawn from the jury, continued or tried before another jury; that while Mr. Martin, one of defendant's attorneys, knew defendant was not at the time in his assigned seat, he did not know that he was out of the courtroom; that neither of the attorneys for the State knew of the defendant's absence until one of the State's counsel called attention to that fact." Under the explanation of the court, and the character of testimony introduced, we do not think there was such error as authorized a reversal of this case. In the case of Bell v. State, 32 Texas Crim. Rep., 436, a man was on

trial for murder, and after the examination in chief of the last State's witness was concluded, and cross-examination was begun, it was discovered that the accused was absent from the courtroom, having been taken by the sheriff to the jail, whereupon further proceedings were suspended and the testimony of said witness withdrawn from the jury, and the court then adjourned. We held in that case that the withdrawal of the evidence, the facts being important, to which the witness testified, the conviction could not stand, because in contravention of section 10, article 1 of the Constitution, and articles 25 and 596 of the Code of Criminal Procedure. In that case, however, appears this statement: "But the witness was not again recalled to testify at the trial." Appellant cites a Florida case, and Underhill on Criminal Evidence, pages 232 and 244, to support his insistence that the error was a basis for a new trial. We do not think, under our law, that every error of this character would authorize this court to reverse a case. There is no specific declaration in the Constitution that guarantees the defendant's presence at the trial; however, we concede it is a clear inference from another provision of the Constitution which says he shall be confronted with the witnesses; he cannot be confronted, of course, unless he is present, and in this sense the Constitution guarantees his personal presence during the progress of his trial. The testimony introduced, as above stated, was record testimony. A couple of little books with the name of the deceased in the fly-leaf thereof were found in a manger in the town of Fort Worth, evidently placed there by appellant. The fact of the deceased's name being in the two books alone was introduced during appellant's absence. When he returned the same fact was reintroduced in his presence and were not controverted nor questioned, nor is there anything in the record to in the least throw a doubt upon the fact that the names were in said books. This being true, it would be dallying with justice to say that appellant would be entitled to voluntarily get up and leave a courtroom and because a little isolated fact was proven, which was entirely undisputed during the entire progress of the trial, it should operate a reversal of the case. There is no possible injury that could have accrued to appellant by the conduct complained of. While, of course, we heartily endorse the opinion in the Bell case above cited, yet we do not think the facts in this case come within the decision of the Bell case. There important testimony was introduced during the absence of appellant, and it was never attempted to be reintroduced during his presence, but here the exact facts that were proved in his absence were proved in his presence, thereby guaranteeing to him the beneficent benefit guaranteed to him under the Constitution of this State. Having been guaranteed every right under the Constitution; having been confronted with every witness and every fact, we do not think we would be warranted in reversing this case for a matter of this character. If there could be any cavil as to whether testimony was introduced in appellant's absence that was not reintroduced, or if testimony to any extent was introduced out of which a cavil could arise, that the same testimony was not introduced in his presence,

we would not hesitate to reverse the case therefor, but here, as several times stated, the exact testimony was reintroduced, just the sole isolated fact of deceased's name being in a couple of books, there the books were before appellant, and yet there is no cavil or contention that the names were not in the books. This being so, we think appellant is in error in asking this court to reverse the case on this proposition. This record shows a cruel murder with no justification or excuse; a murder of a companion in order to secure his money, and the law of this State has inflicted thereupon the death penalty, and we think the jury were amply warranted in applying the law to the facts against appellant and so finding in this case, the judgment is in all things affirmed.

*Affirmed.*

Henderson, Judge, absent.

### ON REHEARING.

#### December 18, 1907.

BROOKS, Judge.—This case was affirmed by us at a former sitting of this court, and now comes before us on motion for rehearing. We held that the jurors who sat in the case as disclosed by the bill of exceptions were all qualified jurors. Appellant in his motion for rehearing, however, complains of an inaccuracy in the former opinion wherein we stated, to wit: "The bill fails to show the jurors sat upon appellant's jury, therefore the bill itself was defective." Appellant attaches to his motion for a rehearing a certified copy of the bill presenting the matter, and we cheerfully concede that we were in error in holding that the bill is defective in the particular complained of. Since the bill does show that said jurors sat upon the trial of the case, and appellant had exhausted his peremptory challenges, this does not change, however, the disposition of the case, since we held in the former opinion, and we think correctly, that all of said jurors who did sit in the trial of the case, were qualified jurors under the Constitution and laws of this State.

We have again reviewed appellant's insistence in reference to the qualification of the jurors and feel constrained to overrule the motion for new trial and it is so ordered.

*Overruled.*

Henderson, Judge, absent.