## FRANCISCO GARCIA v. THE STATE.

No. 17196.   Delivered February 6, 1935.

The opinion states the case.

John Baker, of Beeville, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is rape; penalty assessed at confinement in the penitentiary for ten years.

The averment in the indictment is that appellant had carnal knowledge of Juanita Zapata, a female under the age of eighteen years, and not the wife of the appellant. There is no averment of force. The form of the indictment is approved in Willson's Criminal Forms, page 258, Form No. 497. See also article 1183, P. C., 1925.

The prosecutrix testified as did the appellant. In the testimony of each of them, it is declared that appellant had carnal knowledge of the prosecutrix several times on the occasion mentioned. She claimed the rape was by force. The appellant's testimony is to the effect that it was with her consent; that the prosecutrix accompanied him and took part in the intercourse. The evidence is to the effect that the prosecutrix was fifteen years old on June 24, 1933. The date of the offense, as averred in the indictment, is March 3, 1934. The date of the indictment is April 5, 1934.

The offense is defined and denounced in article 1183, P. C., 1925, in which the carnal knowledge of a female under the age of eighteen years, with or without her consent, is penalized. The article concludes with the following statement: "Provided that if she is fifteen years of age or over the defendant

may show in consent cases she was not of previous chaste character as a defense."

In the present instance, the evidence is uncontroverted that the prosecutrix was something over fifteen years of age but less than eighteen years. The jury's finding implies that the prosecutrix was under eighteen years of age.

The evidence of the prosecutrix is to the effect that she was kept in custody in a car by the appellant for many hours; that when finally released she left on foot. While walking along the highway, she was recognized and picked up by her uncle who was driving an automobile on the public road. He took her home to her father and mother, who were both present when she arrived.

Appellant testified in his own behalf in substance as follows: About a month prior to the alleged offense, he met the prosecutrix at a negro dance hall. He made love to her and she agreed to be his sweetheart. On every Saturday night after he first met her, he came to the dance hall and danced with her. On the night of the alleged occurrence, the prosecutrix insisted on going riding with appellant in his car. After the dance was over she entered the car of her own volition. After riding for sometime she suggested that they stop and park for a while. After hugging and kissing, they engaged in sexual intercourse twice. After doing so, she said that her "sickness" was on. Appellant told her he would marry her but said he did not have enough money at the time; that he would have the money in about two weeks. The car was then driven to town and appellant asked her if he should take her home. She said, "No, just stop wherever I tell you to." He complied with this suggestion. He claimed in his testimony that he loved the girl and wanted to marry her. He testified: "I heard her testify yesterday that I slapped and hit her, but that isn't the truth."

He denied that he locked her up in the car, and also that he grabbed her while she was standing in the door of the dance hall. He said he did not take her home because it was against her wish. She told him to say nothing of his riding with her. Appellant expressed the opinion that he was not the first person who had intercourse with the prosecutrix. In rebuttal the prosecutrix denied the testimony set out above so far as it involves consent. She reiterated her claim that she was forced into the car and that the intercourse was without her consent.

Bill of exception No. 1 complains of the testimony of the mother of the prosecutrix to the following effect: "My daughter was wabbling and looked like she was crazy; she was wab-

bling; she couldn't walk, and she was swollen in the face where the man slapped her; her face was swollen and she was sick in the back; when she got home she started crying very much."

Bill No. 2 consists of the complaint of the declaration of the father of the prosecutrix, who testified: "Just as soon as I saw my daughter, I asked her, 'What has happened to you?' and she said, 'A man grabbed ahold of me, and he done just what he wanted with me and left me along out there.'"

Bill No. 3 reflects the opposition of the appellant to the testimony of the mother of the prosecutrix as follows: "I have her clothes; the condition of them when she returned home was bloody; she had a very bad flow of blood."

The complaint of the reception of the testimony last quoted is that it was not the best evidence; that the clothes should have been produced upon the trial.

The testimony complained of in Bill No. 1 seems merely to have described the condition of the prosecutrix when first seen by the mother. It does not mention the appellant.

Bill No. 2, like Bill No. 1, adds nothing to what had gone on before. It does not name the appellant; nor does it state what actually is claimed to have occurred. The same may be said of Bill No. 3. The mother described the condition of the clothes of the daughter when she reached home. The prosecutrix had previously testified to her condition. Appellant also testified to the fact that he had intercourse with the prosecutrix, and that she explained that her "courses" had come on, thus producing the blood. Upon the appellant's testimony, he was guilty of an offense unless the girl was of previous unchaste character, which was not proved according to the finding of the jury. Viewed in the light of the entire record, we fail to perceive any error in either of the three bills mentioned.

Bill No. 5 relates to a conversation between the prosecutrix and her father, who testified: "When she spoke to me, she said, 'Please don't make me marry with that man.' I said 'What man?' and she said, 'That man that took me out,' and I said, 'What man am I going to make you marry if you don't know his name? I couldn't do that; when were you took out? You ran away from my place'; she told me that she was done awful bad, or that's what she said; that she was treated awful bad; she said, if she would ever see the man again she could identify him."

Bill No. 5, like Bills Nos. 1, 2 and 3, does not mention the appellant. It does not say what man took the girl out or mistreated her. The bill must be appraised in the light of the

testimony of the appellant as well as that of the State. As stated above, his testimony is such as to show that he had committed a felony unless, as stated, the woman was of previous unchaste character which, according to the finding of the jury, was not the case.

Bill No. 6 is in question and answer form and in the main deals with the same subject matter as is contained in the several bills of exception mentioned. In Bill No. 6, the only matter of importance of which complaint is made is that in which it was sought to prove the declarations of the prosecutrix to her father, wherein she said: "Father, I didn't run away with that man; he grabbed me and took me away." The objection to this statement was sustained and the jury instructed to disregard it.

Bill No. 4 is based upon the contention that appellant was absent during his trial. It appears from the bill that a deputy sheriff conducted appellant out of the court room to a toilet in the adjoining room; that this was done at the request of the appellant; that the trial was in progress at the time and the prosecutrix gave testimony in the hearing of the jury. It also appears from the bill that during the absence of the appellant three questions were propounded by the District Attorney to the prosecutrix to each of which she replied; that "after the return of the defendant to the court room by said officer, the court stenographer was instructed to, and did re-read, three questions by the district attorney and answers (made) by the witness in the hearing of defendant and all concerned, covering the time defendant was absent from the court room." It further appears from the bill that appellant made objection to this procedure in his amended motion for new trial. However, we infer from the recital in the record that he complained of it before the verdict was rendered. Appellant contends that the error in proceeding with the trial in his absence was one that could not be cured. The circumstances shown in the bill are not regarded as rendering a new trial imperative. See article 580, C. C. P.; also Boatright v. State, 118 Texas Crim. Rep., 547; Speegle v. State, 102 Texas Crim. Rep., 498; Curl v. State, 65 Texas Crim. Rep., 431; Cason v. State, 52 Texas Crim. Rep., 220.

The jury having rejected the appellant's claim that the prosecutrix was of previous unchaste character, there appears no phase of the evidence upon which an acquittal would have been authorized.

The question of a suspended sentence was submitted to the

jury and the refusal to grant the suspension was within the discretion of the jury.

Upon the record before us, we are constrained to affirm the judgment. It is so ordered.

*Affirmed.*