Rosa **BALTIERRA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 54487.

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1979.

David Escobar, Raymond C. Caballero (on appeal only on the State's motion for rehearing en banc), El Paso, for appellant.

George N. Rodriguez, Jr., County Atty. and Todd D. Chenoweth, Asst. County Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

The Court granted the State's motion for leave to file a motion for rehearing in this cause in order to consider a matter of first impression that was accorded constitutional dimension by the panel opinion. After the motion for rehearing was filed the Clerk of this Court received a "Supplemental Transcript" duly approved by counsel for the parties and judge of the court below and properly certified by its clerk. The supplemental transcript contains materials in addition to the original record that so alter the posture of the case and change the context in which issues were presented to the panel that we are impelled to withdraw the original opinion and substitute for it this one.

Appellant was convicted in a trial before the court, after waiving a jury, of the offense of theft of property having a value of over five ($5) dollars and less than twenty ($20) dollars. The court assessed punishment at sixty days confinement in the county jail; however, appellant was placed on unsupervised probation for a period of 180 days.

In her first two grounds of error appellant challenges admissibility of a confession which she signed in the basement of a security office of the store in which she was alleged to have committed the theft; her third ground of error contends the evidence is insufficient to sustain the verdict as to value of the property alleged in the information. We do not reach these grounds of error because we perceive unassigned fundamental error that dictates our disposition of the cause.

The record reflects that appellant is a Mexican national who had recently moved

to Juarez from a ranch near Chihuahua, both within the Republic of Mexico. Interrogation of appellant at the time she was arrested by the security officer was conducted in Spanish. The security officer testified that he obtained assistance of a Spanish speaking employee to converse with appellant and interpret a confession into Spanish so that appellant could read and understand it. Thereafter, the arresting police officer spoke to appellant only in Spanish.

The offense is alleged to have occurred October 9, 1976 in El Paso, El Paso County. Immediately after her arrest appellant was confined to the El Paso County Jail. Complaint and information were filed October 13, 1976 and on October 14, 1976 appellant was arraigned in County Court at Law No. 2, on which occasion the record reflects, in pertinent part the following:

"THE COURT:

The Court will call the case of the State of *Texas v. Rosa Baltierra* for arraignment, who is now in custody in the County Jail, and not out on bond. Rosa Baltierra, how do you plead, guilty or not guilty, and do you understand the charges against you, which is theft over $5.00 and under $200.00?[1]

THE DEFENDANT:

No response.

COURT INTERPRETER:

Your honor, the defendant, Rosa Baltierra, is from Mexico and does not understand or speak the English language.

THE COURT:

Very well, the Court Interpreter will translate for the Defendant. How do you

plead, guilty or not guilty to the charge of theft. . . .

DEFENDANT THROUGH COURT INTERPRETER:

I understand the charges against me and plead not guilty."

Upon inquiry the court ascertained that appellant was not represented by an attorney and did not have funds to employ one and then stated:

"Very well, the bailiff, who understands Spanish, will help the Defendant fill out an application for appointment of counsel."

The application completed, the court reviewed it and designated counsel to be appointed for appellant, stating:

"Mr. Escobar is fluent in the Spanish language and I appoint Spanish-speaking attorneys for defendants from Mexico who do not understand English, and I am appointing David Escobar inasmuch as you do not understand or speak the English language and only understand and speak the Spanish language. * * * "

October 20, 1976 the case came on to be heard first on a motion to suppress the alleged confession of appellant and, subject to ruling on that motion, for trial on the merits. The State properly assumed the burden on the motion and called as its only witness Security Officer Robert L. Anthony who, as already indicated, required assistance from a Spanish speaking employee to converse with appellant.[2]

Examination, cross-examination and redirect examination, during the course of which there were offered and introduced two exhibits,[3] then consumed 20 pages of

---

1. Either an inadvertent remark by the court or hearing by the court reporter for both the complaint and information and other papers in the cause clearly show the maximum value to be $20.00—a class B misdemeanor.

2. Security Officer Anthony testified, after stopping appellant and asserting she had some merchandise she had not paid for:

"Q: At what point did you ascertain that she did not speak English?
A: Well, when she started, she just gave me the merchandise, you know, she said 'no tiene English'.

* * * * * *

Q: How did you know she wanted to pay for the merchandise?
A: She asked me if she could pay for it.
Q: In English?
A: In Spanish.
Q: Do you understand much Spanish?
A: A little bit."

3. State's Exhibit 1 is an "Incident Report" that amounts to a confession of guilt—it is in Spanish and was apparently prepared by a Spanish speaking secretary. State's Exhibit 2 is the same Incident Report translated into English.

the record. The motion to suppress was denied.

On the merits the State offered two witnesses, the same security officer that testified on the motion and the manager of the department from which the merchandise was allegedly stolen. During the course of their examination State's Exhibits 3 through 9, being the items of merchandise, were identified and admitted; the State's case in chief consumed some 33 pages of the record. The defense called for brief testimony the arresting police officer, primarily to show willingness of appellant to pay for the merchandise and money in her possession to do so, and the custodian of records of the El Paso County Jail to show the amount of money in her property account that was sufficient to pay for the merchandise. Then the defense called appellant herself who, according to the record, testified through an interpreter. During the course of her testimony, when asked if the security officer yelled at her, she answered that he only got mad "because I could not understand English."

Under these circumstances we are presented with the question of whether the appellant was denied the right to confront witnesses against her under provisions of the Sixth Amendment to the Constitution of the United States and Article I, Section 10 of the Bill of Rights in the Constitution of Texas. Because this question is one of constitutional dimension and would open this conviction to attack by a post-conviction writ of habeas corpus,[4] we review it in the interest of justice. Article 40.09, Section 13, V.A.C.C.P.

■■■ It is basic that the right of confrontation includes, as "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal,"[5] the right to cross-examine those witnesses. Also, within the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him, *Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), absent a waiver of that right through defendant's own conduct as in, e. g., *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In a real sense, as well as the right to be physically present, one must also be mentally present to confront and be confronted by and cross-examine witnesses, for a defendant is not to be tried unless possessed of "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Article 46.02, Section 1(a)(1) and (2), V.A.C.C.P.; *Jackson v. State*, 548 S.W.2d 685, 691 (Tex. Cr.App.1977); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

■■ Physical presence and competency, essential requisites of confrontation, are personal to the accused and without affirmative action or assent by the accused those imperatives may not be disregarded or ignored by the courts.[6] But even presence

---

**4.** See *Ex Parte Nanes*, 558 S.W.2d 893 (Tex.Cr. App.1977); see also *Negron v. New York*, 434 F.2d 386 (2nd Cir.1970).

**5.** *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

**6.** In *Bell v. State*, 32 Tex.Cr.R. 436, 24 S.W. 418 (Tex.Cr.App.1893), after defendant was escorted by the sheriff from the courtroom to the jail, the prosecution was permitted to examine a witness and not until cross-examination began by counsel for the defendant was the absence of the accused discovered; thereupon, the court suspended further proceedings, withdrew the testimony of the witness from consideration of the jury and adjourned the court, but what this Court characterized as "more than

one important fact" was given by the witness and he was not recalled during further progress of the trial. Holding the procedure fatal to the conviction, the court pointed to the right of confrontation, the statutory requirement that defendant be personally present at felony trial, and then observed and concluded:

"Every right guaranteed him under the provisions of law cited above should be strictly observed, for these rights are the safeguards of the citizen, and beyond the power of the courts to disregard or ignore. The power to disregard one implies the power to ignore all. He cannot be deprived of these rights without his consent, had in a proper way, and the courts should see to it that these provisions of law are not violated during trials had be-

and competency do not suffice to provide confrontation where the accused does not understand the language of the forum. Over the years this Court has altered earlier views [7] and in *Garcia v. State*, 151 Tex.Cr.R. 593, 210 S.W.2d 574 (1948) reviewed authorities from other jurisdictions and discerned, 210 S.W.2d at 579, "the generally accepted rule governing the question here presented is that the right of an accused who does not speak or understand the English language to have an interpreter appointed to interpret to him the testimony of the English-speaking witnesses rests largely in the discretion of the trial court," and found, 210 S.W.2d at 580:

" . . . We know that in this State, especially along the Rio Grande border, our citizenship is comprised of Latin Americans who speak and understand only the Spanish language. These citizens, as well as nationals of the Republic of Mexico (which [is] the status of appellant), when brought before the courts of this State charged with crimes against the laws of this State, are entitled to be tried according to the Constitution and laws of this State. This, of necessity, means they are entitled to be confronted by the witnesses under the same conditions as applied to all others. Equal justice so requires. The constitutional right of confrontation means something more than merely bringing the accused and the

witness face to face; it embodies and carries with the valuable right of cross-examination of the witness.

Unless appellant was in some manner, either through his counsel or an interpreter, afforded knowledge of the testimony of the witness, the right of cross-examination could not be exercised by him."

Pointing out that Garcia had timely requested appointment of an interpreter the court concluded that "in denying to appellant an interpreter, the trial court abused his discretion and appellant was thereby denied a right granted by the Constitution."

Close on the heels of *Garcia* came *Field v. State*, 155 Tex.Cr.R. 137, 232 S.W.2d 717 (1950) and *Williams v. State*, 155 Tex.Cr.R. 594, 238 S.W.2d 534 (1951), the former a deaf-mute and the latter totally deaf. The claim of each that right of confrontation had been denied because testimony was not communicated through an interpreter or otherwise was rejected for different reasons. Both decisions, however, were effectively overturned by the 1961 legislative mandate of what is now Article 38.31, V.A. C.C.P., that trial proceedings be interpreted to an accused who is deaf or a deaf-mute.

Thereafter, perhaps responsive to a renaissance of judicial caution in finding waiver of a constitutional right or guarantee,

fore them. * * * There is but one safe guide in such matters, and that is a strict obedience to and conformity with the statutes and constitution. It is not always requisite to inquire whether harm has been done, or injury inflicted, by a violation of the provisions of law in this regard. The mere fact the peremptory demands of the constitution and statutes have been violated is sufficient injury. The withdrawal of the evidence did not reach the error occurring in this case." Cf. *Cason v. State*, 52 Tex.Cr.R. 220, 106 S.W. 337, 339–340 (1907); *Hill v. State*, 54 Tex.Cr.R. 646, 114 S.W. 117, 119 (1908). Indeed, as to competency, Article 46.02, Section 2, V.A.C. C.P., requires that the issue be decided if the trial court determines there is evidence to support a finding of incompetency "on its own motion or on written motion by the defendant or his counsel" and if, during trial, evidence of incompetency "is brought to the attention of the court from any source," the trial court must conduct a hearing to determine whether there

is evidence to support a finding of incompetency.

7. *Livar v. State*, 26 Tex.App. 115, 9 S.W. 552 (1888), no error in failing to provide an interpreter for benefit of a defendant who could not speak English because there is no law requiring the court to do so; *Zunago v. State*, 63 Tex. Cr.R. 58, 138 S.W. 713 (1911), no error in refusing motion to exclude testimony of witnesses who testified in English that accused did not understand and expressing the opinion that the constitutional provision for confrontation was not violated; *Luera v. State*, 124 Tex.Cr.R. 507, 63 S.W.2d 699 (1933), no denial of confrontation with respect to witnesses for the State testifying in English when an interpreter to translate into Spanish was not requested, counsel for defendant knew and understood English and the record reflected that defendant himself could speak English.

this Court examined assertions of denial of right of confrontation, when an interpreter was not utilized to translate proceedings and testimony in English to a language understood by accused, somewhat differently. It looked to see not only whether a request had been made but also, even if one had been, to an actual showing that accused did not speak and understand the English language. *Salas v. State*, 385 S.W.2d 859 (Tex.Cr.App.1965) held that the record did not reveal error where a request for an interpreter had not been made and there was no testimony that appellant was unable to understand English or whether his counsel could interpret for him. In *Ex Parte Marez*, 464 S.W.2d 866 (Tex.Cr.App.1971) this Court recognized that providing an interpreter to an accused is based on the constitutional and statutory guarantees of confrontation under the Constitution of Texas and of the United States, citing *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), but was unable to find that petitioner could not and did not understand the English language during his trial since his own testimony was in clear, concise and intelligible English. To the same effect is *Diaz v. State*, 491 S.W.2d 166, 168 (Tex.Cr.App.1973). Thus, although denying relief in each instance, both *Marez* and *Diaz* constitute current authority for the proposition that constitutional and statutory guarantees of confrontation include, in a proper case, that the trial proceedings and testimony be interpreted to the accused in a language he can understand by a qualified interpreter.[8] Subsequently in *Flores v. State*, 509 S.W.2d 580 (Tex.Cr.App.1974) the court reiterated the constitutional basis of providing an interpreter to an accused but upheld refusal to appoint one for an accused who understood and spoke English but was more fluent in Spanish, concluding that the

latter characteristic "does not, in and of itself, make it incumbent upon a trial court to appoint an interpreter for an accused who speaks and understands the English language."

All of which brings us up to *Ex Parte Nanes*, supra, footnote 4. In that post-conviction habeas corpus proceeding Nanes contended he was denied his constitutional rights to confrontation of the witnesses at his original trial because he was not afforded an interpreter throughout the proceedings. The State stipulated with appellant that he did not understand the English language during the case in which he was convicted. It was also shown that an interpreter, present at some phases, was absent during other segments of the trial and was only asked to interpret while appellant was on the stand and when he asked to change his plea. Holding that the record supported his contention, habeas corpus relief was granted and relator was ordered released to the affected sheriff to answer the original indictment. The Court seemed impressed with the undisputed fact that Nanes did not understand the English language and deemed it significant that the interpreter, though available, served only when asked to do so.

Here, a nineteen year old Mexican national from the interior who has been employed in Juarez for one month as a housemaid earning $20.00 per week and who had never before been convicted of a felony or a misdemeanor was taken before the court after some four days confinement for arraignment and, being unable to understand, made no verbal response when asked for her plea. Immediately the "court interpreter" informed the court of her inability to understand or speak the English language and all proceedings thereafter during the arraignment were translated for her by the

---

8. In Great Britain since at least 1916 a duty is placed on a trial court to have testimony interpreted to an accused who does not understand the language spoken by a witness, *Rex v. Lee Kun*, 1 K.B. 337, 9 B.R.C. 1121 (1916). The same rule prevails in many other jurisdictions in this country, as noted in 23 C.J.S. Criminal Law § 1006 p. 1065—"Testimony Through Interpreter," citing, e. g., *State v. Masato Karumai*, 101 Utah 592, 126 P.2d 1047 (1942):

"Thus it is the duty of the Court to take whatever steps are necessary to prevent injustice and, if necessary, the Court should, on its own motion, appoint an interpreter for the defendant at the State's expense."

See also *State v. Natividad*, 111 Ariz. 191, 526 P.2d 730, 733 (1974).

court interpreter. Thereafter at pre-trial and trial, while we do not know of the immediate availability of the court interpreter as other witnesses testified in the English language, he appeared without any noticeable break in the proceedings to translate the testimony of appellant when she took the stand. Thus the same matters that impressed the Court in *Ex Parte Nanes*, supra, are present here.

■ We do not impair the doctrine of *Garcia* and its progeny by holding that in the circumstances of this case appellant did not waive her "right" to have the proceedings translated by failing to request that the court interpreter do so.[9] Similarly situated as she is to *Negron*, supra, 434 F.2d at 390:

"Nor are we inclined to require that an indigent, poorly educated Puerto Rican thrown into a criminal trial as his initiation to our trial system, come to that trial with a comprehension that the nature of our adversarial processes is such that he is in peril of forfeiting even the rudiments of a fair proceeding unless he insists upon them. Simply to recall the classic definition of waiver—'an intentional relinquishment or abandonment of a known right,' *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)—is a sufficient answer to the government's suggestion that Negron

waived any fundamental right by his passive acquiescence in the grinding of the judicial machinery and his failure to affirmatively assert the right. For all that appears, Negron, who was clearly unaccustomed to asserting 'personal rights' against the authority of the judicial arm of the state, may well not have had the slightest notion that he had any 'rights' or any 'privilege' to assert them." [10]

■ Accordingly we hold that when it is made known to the trial court that an accused does not speak and understand the English language an interpreter must be furnished to translate to the accused the trial proceedings, including particularly testimony of the witnesses presented by the State.[11] In the absence of the opportunity to be aware of the proceedings and the testimony of the witnesses against her, appellant was denied the constitutional right of confrontation and, that right not being knowingly and intelligently waived, her trial and conviction are null and void.

The judgment of the trial court is reversed and remanded.

## ON STATE'S MOTION FOR REHEARING

W. C. DAVIS, Judge, dissenting.

I dissent from the majority's holding reversing this cause due to the failure of

9. Our holding does not, as the State argues, require it to "assume the burden of showing the defendant can in fact understand English when non-comprehension is claimed, or to allow the testimony to be interpreted." We expressly disclaim the intent or effect of placing any burden on the State in this respect. The onus, if any there be, is still where *Garcia*, supra, 210 S.W.2d at 581, placed it when the ability to speak and understand English to some extent is raised:

"[W]hen such condition arises it becomes necessary for the court, in the exercise of his discretion, to make inquiry to ascertain whether accused's rights would be safeguarded in the absence of an interpreter.

10. This Court is not, of course, bound by any decision of the United States Court of Appeals, 2nd Circuit, but it is noteworthy that the panel rendering the opinion consisted of Chief Judge Lumbard, United States Supreme Court Associate Justice, retired, Clark and Circuit Judge Kaufman—each a respected jurist.

11. The trial court commendably appointed counsel fluent in the Spanish language and thereby afforded appellant a basic aspect of effective assistance of counsel, ability to communicate. But effectuating that important constitutional requirement should not be taken as implementing the constitutional right of confrontation. While there is a suggestion in *Garcia*, supra, and other cases that a lawyer speaking the same language can interpret testimony for an accused, we believe that added task, with its obvious distracting implications, should not be imposed on counsel. The lawyer discharges his obligation by providing effective assistance guaranteed by the Sixth Amendment to the Constitution of the United States and Article I, Section 10 of the Constitution of Texas. Counsel is not obliged to implement the right of confrontation. That duty is imposed upon the court by the confrontation clause in the Sixth Amendment and Article I, Section 10.

the trial court to sua sponte furnish appellant with an interpreter.

The majority's holding is grounded in the confrontation clauses of both the Federal and State Constitutions. To assure confrontation of witnesses and to provide sufficient opportunity to cross examine those witnesses, under the majority decision, a trial court, once aware that an accused cannot understand English, must furnish an interpreter to translate to the accused the trial proceedings, including the testimony of witnesses presented by the State.

*Garcia v. State*, 151 Tex.Cr.R. 593, 210 S.W.2d 574 (1948) is the foundation case upon which the majority builds. *Garcia* holds that the furnishing of an interpreter is preconditioned on two facts: (1) a showing that the accused could not speak or understand the English language, and (2) a timely request by accused for an interpreter. Once these prerequisites are established, the furnishing of an interpreter is a discretionary function and in exercising this discretion, the trial court may look to see if the accused's right to confrontation is protected by another device. *Garcia*, supra.

The *Garcia* holding has been followed by this Court on several occasions. In *Field v. State*, 155 Tex.Cr.R. 137, 232 S.W.2d 717 (App.1950), failure to request an interpreter was held to be a waiver. In *Salas v. State*, 385 S.W.2d 859 (Tex.Cr.App.1965), there was no showing that the defendant was unable to understand English and, therefore, no abuse of discretion in failing to furnish an attorney. *In Flores v. State*, 509 S.W.2d 580 (Tex.Cr.App.1974), there was no showing that defendant could not understand or speak English.

The record before us indicates that appellant could not speak nor understand English. However, there was no request by appellant's counsel for an interpreter. Further, the trial court appointed appellant an attorney who was fluent in Spanish and

English. Therefore, under *Garcia*, there was no abuse of discretion.[1]

For these reasons, I respectfully dissent.

DOUGLAS, J., joins.

---

1. *Ex parte Nanes*, 558 S.W.2d 893 (Tex.Cr.App. 1977), granted habeas corpus relief based on the absence of an interpreter through the entire trial proceedings. In *Nanes*, the defendant did not speak or understand English and an interpreter used during portions of the trial stated that defendant appeared confused and in a state of shock. There is no indication in *Nanes* that the trial court appointed a Spanish-speaking attorney or otherwise sought to protect the defendant's right to confront witnesses.