Gilbert MARES, Jr., Appellant,

v.

STATE of Texas, Appellee.

No. 04–81–00123–CR.

Court of Appeals of Texas, San Antonio.

July 28, 1982.

David Chapman, San Antonio, for appellant.

Bill White, Dist. Atty., John J. Horn, III, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CLARK, JJ.

## OPINION

PER CURIAM.

This appeal is taken from a conviction for murder in a trial by jury. Appellant was tried jointly with co-defendant Jesse Gonzales, a/k/a Joe Jiminez. Upon appellant's election to have punishment assessed by the trial court, he was sentenced to 35 years' confinement. Appellant alleges reversible errors concerning the trial court's failure to provide him with an interpreter for portions of his trial because he did not speak English, and also contends that there was reversible error in the trial court's refusal to charge the jury on the law of circumstantial evidence. We affirm the judgment of conviction.

The State's evidence indicated that Jesus De Anda was stabbed in the neck with a knife outside a San Antonio nightclub in the early morning hours of July 27, 1979, and died shortly thereafter from his wound. San Antonio police officers who had just made a burglary arrest down the street pursued and caught two fleeing men who had been struggling with De Anda. Appellant was one of the two. A third officer determined De Anda's identity from the contents of his billfold. No weapon was ever found. There was eyewitness testimony that appellant had pulled a knife and slashed at De Anda's face.

In three grounds of error, appellant complains of having been denied an interpreter. In the first ground, he alleges that the denial of an interpreter constituted a violation of his right to confrontation, under the Sixth and Fourteenth Amendments to the United States Constitution, of his co-defendant who testified against him. His second ground of error implicates the same right, based on there having been no interpreter assigned to translate throughout the trial, even though one was made available for portions of the trial. His third contention is that his trial counsel rendered ineffective assistance in failing to bring to the trial court's attention appellant's inability to understand the English language.

The record indicates that after all twelve of the State's witnesses had testified and the State had rested, appellant's counsel announced appellant's desire to testify in his own defense and requested the assistance of an interpreter. The trial court, obviously surprised, indicated his lack of prior knowledge of appellant's language difficulty:

"THE COURT: This is the first time it has been brought to the Court's attention there is a problem of his understanding and speaking the English language. I have never been informed. I notice he sits there and talks to you throughout the trial.

"MR. MONTEMAYOR [defense counsel]: Yes, Your Honor. I'm willing to stipulate my name is Marcello Montemayor, I am legal defense counsel and I speak Spanish and during the course [sic] I have explained these matters to him both in English and in Spanish. But for the purpose of the record I want to get it down on the record that I have advised him of his constitutional right to remain silent if he desires.

"THE COURT: You understand that, don't you, what he is saying?

"MR. MONTEMAYOR: He doesn't understand very well. If I translate in Spanish he will, your Honor, and if we go through—

"THE COURT: Well, all right. Will the translator please stand around.

"MR. MONTEMAYOR: Ask [sic] Gilbert Mares he has the right to remain silent and that he has a right not to testify and he has a right not to take the stand and incriminate himself.

Ask him if he understands it?

"INTERPRETER: Yes."

Appellant was then sworn, and the trial court determined that he understood that by taking the stand he gave the State the right to bring up his previous criminal record.

The court admonished further:

"THE COURT: Now, he has a right, if he wants it, to have an interpreter sit with him throughout this trial.

"MR. MONTEMAYOR: Yes, he wants one.

"THE COURT: All right. Now, it has been my observation throughout this trial that you were communicating in the English language with your attorney?

"MR. MARES: In Spanish.

"THE COURT: In Spanish.

"MR. MONTEMAYOR: In Spanish and English.

"THE COURT: All right. I want to get this interpretered [sic]. This is the first time that I have been advised that he had any problem whatsoever with the English language and I noticed that he, that when he stood up when he was arraigned that he answered it in English, appeared to answer, appeared to be understanding.

"MR. MARES: I talk a little of English but hardly any.

"THE COURT: Okay, I'm just wanting to make sure. Since it has been brought to the Court's attention I want to be sure so I'm going to instruct after he gets off the stand, because he doesn't need another interpreter now, but I want an interpreter brought here for the rest of the trial.

At this point, the trial court called upon a court employee to interpret until the regular interpreter arrived. Counsel stated that he was willing to proceed and if he saw any difficulty would bring it to the court's attention.

Appellant then testified that he had been at the bar where De Anda was stabbed on the night in question, but had not stabbed or otherwise attacked De Anda. He stated that the only reason he had fled was that he got scared and ran when he saw lights and policemen, because he was on parole and did not want to get into trouble. During cross-examination, he stated that he understood "[j]ust a little bit" of English, and that he had been going to school to learn the language while in prison for a prior conviction. Appellant then rested. At the trial court's suggestion, and with appellant's agreement, the interpreter continued translating after appellant completed his testimony.

Appellant's co-defendant, Jesse Gonzales, also known as Joe Jimenez, then testified that he, too, had had nothing to do with the killing of De Anda. In the middle of Jiminez' testimony, the trial court stopped the trial and noted that the interpreter had not been interpreting Jiminez's testimony for appellant. The court instructed the interpreter to make a word-for-word interpretation of all testimony as it was being stated. Gonzalez' testimony then went on, and the testimony that had not been interpreted was essentially repeated and interpreted.

Defendant Jiminez then rested, and both sides closed. The court read the charge to the jury and final argument was presented in appellant's case. When argument in appellant's case was concluded, appellant's counsel notified the trial court that appellant no longer needed the services of the interpreter. When the court inquired whether appellant understood what was being said, appellant, through the interpreter, said "A little bit, mostly nothing." When the court asked whether he did not care to have the interpreter interpret any longer, appellant, again through the interpreter, stated, "As long as he is not going to have to be a witness anymore." The court wanted to have the interpreter remain through the conclusion of final argument in Jimenez's case, but appellant persisted in his request and the interpreter was excused.

As appellant argues, *Baltierra v. State*, 586 S.W.2d 553 (Tex.Cr.App.1979) is the leading case in this area of the law. In that case, it was clear from the time of arraignment onward that the defendant spoke only Spanish and understood no English. Nevertheless, no interpreter was made available. The court properly held that under those circumstances, even with the appointment of a Spanish-speaking defense counsel and even absent a request for an interpreter, the violation of Baltierra's right to confront the witnesses against her was clear and required reversal. The court there stated, ". . . [W]e hold that when it is made known to the trial court that an accused does not speak and understand the English language an interpreter must be furnished to translate to the accused the

trial proceedings, including particularly the testimony of the witnesses presented by the State."

In *Ex parte Nanes*, 558 S.W.2d 893 (Tex. Cr.App.1977), relied upon by appellant and cited with approval in *Baltierra, supra*, the State stipulated at the fact-finding hearing on the habeas corpus application that Nanes had not understood English at the time of his trial. Relief was granted on the strength of the court interpreter's affidavit that he had been asked to interpret only when Nanes was testifying and when Nanes was asked to change his plea. In both *Baltierra* and *Nanes*, then, the defendant's inability to understand English was clear from the record.

Here, however, the question of appellant's capacity in English is not so clear-cut. Unlike Baltierra, he responded to questioning at arraignment in English. He proceeded to trial without having requested an interpreter, and only requested one for his own testimony. As shown in *Vargas v. State*, 627 S.W.2d 785, 786 (Tex.App.—San Antonio 1982, no pet.), a defendant otherwise satisfied with having his trial conducted without benefit of an interpreter may wish the services of one to ensure that he adequately expresses his own testimony. We also find it significant that the continued participation of the interpreter after appellant had finished testifying was at the behest of the trial court, though appellant acquiesced. Even so, the interpreter was excused prior to the conclusion of the trial at appellant's specific request.

This record does not depict, as did the record in *Baltierra*, ". . . a nineteen year old Mexican national from the interior who has [sic] been employed in Juarez for one month . . . and who had never before been convicted of a felony or misdemeanor . . . ." Rather, the appellant here was a 21-year-old San Antonian, on parole from a prior conviction in which he had received a five-year sentence and had spent one year "and a couple of months" in the Texas Department of Corrections. During that prison term he had taken formal classes in Eng-

lish. He was no stranger to the criminal process, and in fact obviously knew how to request the aid of an interpreter when he wanted one.

 In short, this record does not establish that appellant was so deficient in his capacity to understand and speak English that the absence of an interpreter for portions of the trial amounted to a denial of the fundamental constitutional right of confrontation.[1] In fact, the record reflects that appellant made deliberate choices during the trial as to when he wished to have an interpreter's services and when he wished to dispense with those services. *See also* Tex.Code Crim.Pro.Ann. art. 38.30 (Vernon Supp.1982). Although the better course for the trial court to have followed would have been to inquire on the record, at the time appellant requested the interpreter, whether appellant had been able to understand what had gone on before, we obviously are bound by the record before us. Appellant's first three grounds of error are overruled.

In grounds of error four and five, appellant contends that the trial court erroneously refused his requested jury charge on circumstantial evidence. He argues that there was only circumstantial evidence that appellant stabbed anyone and also contends that the identity of the victim was only proved circumstantially. He relies on *Gamboa v. State*, 528 S.W.2d 247 (Tex.Cr.App. 1975), which held that a circumstantial evidence charge should have been given when the evidence showed only that the eyewitness heard four gunshots in another room of her house and then saw her uncle, the defendant, pocket a pistol, rip the telephone off the wall, and leave the house.

 We disagree with appellant. When the facts proved are in such close juxtaposition with each other as to be the equivalent of direct testimony of the main fact to be proved, no charge on circumstantial evidence is required. *Hunt v. State*,

625 S.W.2d 405, 411 (Tex.App.—San Antonio 1981, discret. rev ref'd 1982), and cases cited therein. We find from the facts that this is such a case.

There was testimony from officer Tony Patterson that while he was trying to determine if he could help De Anda, who was wounded in the neck and lying on the sidewalk outside the Salon Mexico bar, De Anda told him, "They cut me, they cut me, they are getting away." Patterson then saw appellant and Jiminez fleeing and helped officer Joe Casias chase them down. Cipriano Garcia testified that he had seen appellant and another man walk up to a man leaning against an outside wall of a bar called the Commander's Club. The third man made motions indicating "Don't bother me," and then appellant pulled out a knife, the reflection of which Garcia could see. Appellant then "went direct to his [the third man's] face" with the knife and slashed at him. The victim put up his hands for protection, but apparently the damage was done. Garcia heard appellant tell the other man, "I already got him, let's get away from here," and the victim tried to move but fell down in front of the Salon Mexico. Appellant turned around, came back, and began hitting and kicking the victim. When Garcia told appellant to leave the man alone, that he'd had enough, appellant turned on Garcia with the knife and asked if Garcia "wanted any part." Garcia then stepped away and appellant and the other man fled.

These facts clearly fall within the "close juxtaposition" rule. No circumstantial evidence charge was required on the question of whether appellant stabbed anyone. The fourth ground of error is overruled.

 Also, there was no need for a circumstantial evidence charge on the identity of De Anda as the person appellant stabbed. Detective investigator Jim Eigner testified that he was on the scene with officer Patterson and officer Casias on the night in

1. Appellant's statement that he understood "a little bit, mostly nothing" of what was being said must be placed in proper context. During the portion of the trial when he made this statement, the interpreter *had been* translating the proceedings. The statement, therefore, does not reflect on the possible existence of a language barrier.

question. He observed the victim of the stabbing lying on the pavement, bleeding heavily. Identification on the victim's person showed him to be Jesus De Anda. Eigner called for medical assistance, and an ambulance arrived shortly thereafter and transported De Anda to a hospital, where he died. Eigner's identification testimony was corroborated by Victor Ortiz, De Anda's brother-in-law, who stated that on the afternoon of July 27, 1979, he identified the body of the victim in that case at the Medical Examiner's Office as being the body of Jesus De Anda. When there is any direct evidence of the main fact in dispute, a circumstantial evidence charge is not required. *Bates v. State*, 587 S.W.2d 121, 133 (Tex.Cr.App.1979). The fifth ground of error is overruled.

The judgment is affirmed.