EDMUNDO GARCIA V. THE STATE.

No. 23863. Delivered January 21, 1948.
Appellant's Motion for Rehearing Granted March 17, 1948.
State's Motion for Rehearing Overruled May 5, 1948.

*Hall & Hornberger,* of Laredo, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

This is an appeal from a death sentence for murder. The indictment charges appellant with the offense of murder while acting together with Ignacio Gonzalez Chavez and others, whose names were unknown to the grand jury, with the murder with malice of Eugenio Luna by shooting him with a gun. It is alleged that the homicide took place in Webb County on the 26th day of April, 1947.

Appellant had quite a criminal record. He was an escaped convict from a life sentence in the State Penitentiary of Texas. He had been at large for about three years and had spent the time, principally, across the river in Mexico, in the City of Nuevo Laredo which is immediately adjacent to the City of

Laredo, Texas. He had come across the border on numerous occasions, in association with other individuals, and engaged in burglaries from which they carried the loot across the line into Mexico. From the arrangements described it is apparent that this was a regular organized gang. On the night alleged he, with three companions, had planned the burglary of a neighborhood grocery store. Two of them actually entered the store while appellant and another companion remained at separate posts on the outside to keep watch. Those in the store were familiar with appellant's signal by whistle, and would know from it that officers were approaching. Some parties in the neighborhood observed lights in the store and, being suspicious that a burglary was taking place, notified the officers, four of whom came and entered the store to surprise the burglars who were engaged in removing goods therefrom.

Several shots were fired as a result of which one officer and two burglars were left dead on the floor. The arrival of the officers was so sudden that appellant did not have a chance to give the alarm. He fled across the line but returned within a few days and was arrested and charged with the burglary. He made a voluntary confession stating his part in the burglary. As a witness in the case he gave the same facts as stated in his written confession, except that he says he could not speak English and did not authorize them to insert the statement that he knew his companion had a gun. The officers who took the confession swore that it was written as he stated it. The issue on that point was properly submitted by the court to the jury who found against him. This precludes further consideration of the question, so far as this Court is concerned. It is noted, however, that he did testify that one of these men was a very dangerous man, that he was afraid of him and had entered this burglary under the command of the other Mexican after he had decided to quit engaging in Texas burglaries. Under all of the facts and circumstances of the case, it is not essential that he should have known his companion had a pistol. It is sufficient that he should be charged with such knowledge. When we consider the nature of the business in which they were engaged, and the character of the man as testified to by appellant, we think that he should have contemplated that the burglar would kill an officer who may apprehend him while engaged in this burglary. It is too often the case that one taken in a burglarious effort will shoot to extricate himself when an officer has him cornered. We, therefore, eliminate what appears to be the main defense in the case.

We acknowledge with much gratification the very valuable

assistance given us by the court appointed attorneys. The brief which they have filed in this Court has treated every conceivable issue in the case with force and logic. Consequently we have felt obligated to give like diligence in considering the appeal and all of the issues which it presents.

The record contains twenty-three bills of exception, the majority of which are recognized by appellant as being without merit, as discussed by the brief. Bill of Exception No. 3 complains of the refusal of the trial court to place under the rule one of the witnesses who signed the written confession. Whatever merit might have been in this complaint has lost its effect by reason of the fact that the appellant himself took the witness stand and admitted all material statements in it except the one herein discussed. It is noted further that while appellant was testifying he made contradictory statements as to his knowledge of his companions being armed, but did state that he did not expect them to kill anyone. Under the authority of White v. State, 203 S. W. (2d) 222, and authorities therein discussed, the appellant is not in position to complain of the admission in evidence of his written statement on the ground that it was not voluntarily made when he has given practically the same evidence from the witness box.

To the writer, the most meritorious question raised is by Bill of Exception No. 7, from which it appears that while the witness was testifying as to the voluntariness of appellant's statement, appellant asked the court to require the regular court interpreter to interpret such testimony into Spanish so that he could understand it. This request was refused, even though the appellant could not understand or speak English. The record is silent as to whether or not his attorney could speak Spanish. This request appeals to the writer as being an important one, and that it would seem but fair that a party on trial should be able, while confronted with his accuser, to hear and understand what he says. However, our law requires that trials shall be held in English and we find no act of the legislature or decisions of this Court which require an interpreter to translate any part of it into another language. We have no authority to write a new law on the subject.

Appellant requested the court to charge the jury that: "If two or more engaged in an unlawful design, and one of them, incited by his own particular malice, or even to further the escape of all, without knowledge or consent of the others, does a felony foreign to the common design, his felonious act is not to be imputed to his confederates."

In the first place, there is no evidence in the case that the burglar who shot the policeman was incited by his own particular malice. It may be inferred that he did the killing to effect the escape of himself and all others. That he did so without the consent or knowledge of appellant cannot be sustained, in view of all of the facts and surrounding circumstances of the case as herein above discussed. When the thing done is an independent act of one of the conspirators, though done while he was engaged in the common purpose, the others are not legally responsible therefor, but if the crime is in furtherance of the common purpose, and is such an offense as should have been contemplated would result from the execution of the planned burglary, then all engaged in the lawful purpose are equally guilty. We think, under the facts of the instant case, that appellant should reasonably have contemplated that his companions would do the thing which was done, resulting in the death of the policeman, and that the death would be the logical result of their acts. (Serrato v. State, 171 S. W. 1133.) The requested charge would have been more than appellant was entitled to have. The charge given on the subject, to the effect that where a homicide committed is not in any way connected with or in furtherance of the commission of the burglary, but is the independent act on an independent impulse of the party committing the homicide, and is done without the consent of appellant, then the co-conspirators in the burglary would not be guilty of the homicide, even though they were principals in the burglary. It is our conclusion that this charge fully protected appellant's rights in the matter.

Bills of Exception Nos. 21 and 22 complain of the failure of the court to grant a new trial, based on misconduct of the jury. The question of fact thus raised was passed upon by the trial court when he overruled the motion. Such finding is binding on this Court.

We have carefully examined the bills of exception not discussed herein, together with all of the authorities cited in the brief to sustain the position taken, and have concluded that no reversible error is shown in the record.

The judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that he was denied his constitutional rights of being confronted by the witness against him. Bill of Exception No. 10, presenting this question, shows that appellant timely requested that the testimony of certain witnesses testifying against him in English be interpreted to him in Spanish, since he was unable to speak or understand the English language. The bill does not reflect whether counsel representing the appellant could or could not make this interpretation for him.

Our Constitution, Article 1, Sec. 10, among other things, guarantees to every person charged with crime the right to be confronted by the witnesses against him. Such, also, is the effect of Arts. 3 and 22 of the Code of Criminal Procedure.

The question thus presented is whether or not under the facts here presented, it is a violation of the constitution and statutory provisions mentioned to refuse to have the testimony of witnesses testifying in English interpreted to the accused, who is unable to read or understand that language.

In Kemper v. State, 63 Tex. Cr. R. 1, 138 S. W. 1025, at p. 2038, we said:

"The constitutional provision that the accused shall be confronted with the witnesses against him means that the witnesses on the part of the State shall be personally present when the accused is on trial, or that they shall be examined in his presence and be subject to cross-examination by him."

To the same effect is the definition given in 14 Am. Jur., Criminal Law, p. 890, Sec. 177.

While it is true the Kemper case was subsequently overruled upon another point, the definition stated has not been criticised.

Here, confrontation is claimed to have been denied, not because the right to meet the witness face to face was denied but by reason of the fact that he was unable to understand what the witness was saying, and was thereby denied the right and privilege of cross-examination.

Although there appears no express authority so requiring, all proceedings in the trial of cases in this State are conducted in the English language, which follows, no doubt, from the adoption of the English common law.

Express statutory authority exists for the appointment of

interpreters to interpret into English the testimony of witnesses who do not speak the English language. Art. 733, C. C. P. No statute exists, however, requiring the appointment of an interpreter for an accused who does not understand the English language. Livar v. State, 26 Tex. App. 115, 9 S. W. 552. If the appointment of an interpreter for the accused be required, then it is because of the constitutional and statutory guarantee of confrontation.

In Zunago v. State, 63 Tex. Cr. R. 58, 138 S. W. 713, it appears there was an attempt to raise the question now before us. There, the accused, after the introduction of the testimony, moved to strike from the jury's consideration the testimony of certain State's witnesses because the accused, being unable to read or speak the English language, was unable to understand their testimony. In connection with the holding that request for an interpreter was not timely made, this court said, at p. 719: "Doubtless, if this had been requested, (that is, an interpreter) the court would and should have granted the request and furnished the defendant and his attorneys with an interpreter, if they or either of them deemed one necessary or proper, and would and should have given a sufficient time for the interpretation of the testimony of any or all of these witnesses and for a consultation between the appellant and his attorneys in everything pertaining to the testimony of these witnesses." (Parenthesis supplied.)

Appellant relies upon this statement of the court as supporting his contention.

The quoted statement is not deemed a precedent, because the question as to the right of the accused to have an interpreter was not before the court, since it had not been timely presented. It may be said, therefore, that the quoted statement is dictum and does not constitute a precedent. Nevertheless, the quoted statement suggests the view of this court upon the question and is entitled to be here considered in that light. Other than the quoted statement in the Zunago case, we find no case from this court touching the question.

The Sixth Amendment to the Federal Constitution, as well as the Constitutions of most of the States, provides for confrontation in language not materially different to that of our State Constitution.

The right of confrontation is a right granted by the Consti-

tution to preserve the common law right and not to broaden it or disturb its exceptions. Salinger v. United States, 272 U. S. 542, 71 L. Ed. 398, 47 S. Ct. 173.

It is generally agreed that the process of confrontation has two purposes. The main and essential one is to secure the opportunity of cross-examination. Snyder v. Massachusetts, 291 U. S. 97, 78 L. Ed. 674, 54 S. Ct. 330, 90 A. L. R. 575; Dowdell v. United States, 221 U. S. 325, 55 L. Ed. 753, 31 S. Ct. 590; Bell v. State, 2 Tex. App. 215; 14 Am. Jur., Crim Law, Sec. 176.

The granted right is not fixed or immovable; it may be waived. Exceptions exist to its application, as evidenced by the receipt in evidence of dying declarations and res gestae statements of deceased persons and the reproductions of testimony given by witnesses where prior opportunity of cross-examination has been accorded.

A leading case upon the question here presented is that of State v. Vasquez, 101 Utah 444, 121 P (2d) 903, 140 A. L. R. 755, by the Supreme Court of Utah. In that case the accused requested an interpreter upon the ground that he was unable to understand the English-speaking witness. This request the trial court refused because it was not a right to which the accused was entitled. The majority opinion held that the action of the trial court was error and that the request was one addressed to the discretion of the court. Cases from other jurisdictions attesting that conclusion will be found annotated under the Vasquez case, 140 A. L. R., p. 766, et seq. From these cases it may be said that the generally accepted rule governing the question here presented is that the right of an accused who does not speak or understand the English language to have an interpreter appointed to interpret to him the testimony of the English-speaking witnesses rests largely in the discretion of the trial court. We are constrained to agree with and follow this rule.

The question here presented, then, turns upon the instant facts. To connect appellant with the conspiracy to commit the crime of burglary and to show that he was one of the co-conspirators thereto, in the commission of which crime the murder was committed by one of the co-conspirators, the State relied upon appellant's confession. As a predicate for the introduction of this confession, the State proved the facts and circumstances surrounding the making thereof, together with the statutory warning by a witness testifying in the English language. The testimony of the witness was of vital importance to the State,

for, by it, the confession was shown to be admissible in evidence. The right to cross-examine this witness upon his testimony was equally important to the appellant. It was the testimony of this witness which appellant sought to have interpreted to him in a language that he understood. This request was refused without any effort, so far as the record reveals, on the part of the trial court, to ascertain if appellant's court-appointed attorney could make this interpretation for him, or if other means were available to appellant whereby he might understand the testimony of the witness.

As here presented, the action of the trial court in denying appellant's request is susceptible of no other construction save and except that he did not believe that appellant was lawfully entitled to have the interpreter appointed. Such, also, was the view entertained by the trial court in the Vasquez case, supra.

All persons are charged with notice that for crimes committed against the laws of this State, the trial will be conducted in the English language and that for non-English-speaking witnesses the law has made provision for the translation of their testimony by interpreters into the English language, with no express statutory provision requiring interpreters for those accused of crime who do not speak or understand the English language. Such fact tends to support the trial court's ruling. On the other hand, we know that in this State, especially along the Rio Grande border, our citizenship is comprised of Latin Americans who speak and understand only the Spanish language. These citizens, as also nationals of the Republic of Mexico (which was the status of appellant), when brought before the courts of this State charged with crimes against the laws of this State, are entitled to be tried according to the Constitution and laws of this State. This, of necessity, means they are entitled to be confronted by the witnesses under the same conditions as apply to all others. Equal justice so requires. The constitutional right of confrontation means something more than merely bringing the accused and the witness face to face; it embodies and carries with it the valuable right of cross-examination of the witness.

Unless appellant was in some manner, either through his counsel or an interpreter, afforded knowledge of the testimony of the witness, the right of cross-examination could not be exercised by him. Appellant timely requested the appointment of an interpreter. There is nothing to show that his counsel could make the interpretation to him.

From what has been said, the conclusion is reached that in denying to appellant an interpreter, the trial court abused his discretion and appellant was thereby denied a right granted by the Constitution.

It is insisted that in the light of the State's testimony, together with appellant's confession, it cannot be reasonably said that appellant was injured by the refusal to furnish him the interpreter, as requested.

As appellant was denied, over his protest, a right granted by the Constitution, and was given the death penalty by the jury, this court will not indulge in speculation as to injury.

Every person accused of crime is entitled to be tried in accordance with law. Such a trial is not accorded when a constitutional right, timely requested, has been denied.

Believing we were in error in affirming the judgment of conviction, appellant's motion for rehearing is granted, the affirmance is set aside, and the judgment of the trial court is now reversed and the cause is remanded.

Opinion approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In our opinion on appellant's motion for rehearing he is referred to as a "national of the Republic of Mexico." In the State's Motion for Rehearing our attention is directed to this expression as not supported by the record. We find upon a re-examination of the record that appellant's status in the regard mentioned is not made known and the expression to the contrary has been deleted from our opinion on appellant's motion for rehearing. We regard the matter as immaterial. The principle of law applicable would be the same whether appellant was a citizen of Texas or a national of another country.

It is agreed by the State and appellant that State v. Vasquez, 121 P. (2d) 903, 140 A. L. R. 755, is the leading case upon the question under consideration. Our statement on appellant's motion for rehearing that "The majority opinion (in said case) held that the action of the trial court was error" in refusing to furnish accused with an interpreter to translate the testi-

mony of the English-speaking witnesses is challenged. If we were in error in thinking the majority opinion in Vasquez's case so held, then it appears that the publishers of the American Law Reports, Annotated, fell into the same error. The first paragraph introducing the opinion on page 755, 140 A. L. R. reads: "A request, on the trial of a charge of murder, that, on account of defendant's *imperfect* knowledge of English, an interpreter should be provided to interpret the testimony for his benefit, should not be refused, *at least not without an investigation.*" (Italics ours.)

On page 767, same report, in annotating the Vasquez case, it is said: "In State v. Vasquez (Utah) (reported herewith) ante, 755, prosecution for murder, where accused, whose native tongue was Spanish and who stated that *he was unable to understand all that was said in English,* was represented by counsel who did not understand Spanish, the appellate court stated that it was important that the trial court in the exercise of its discretion as to the necessity of an interpreter, either for the defendant or for a witness, be fully advised, *and it was held that the trial court erred in denying accused an interpreter without making some investigation to determine whether one was necessary.*" (Italics ours).

The court there was informed that accused was unable to understand some of the testimony, and could speak only broken English. Even under those circumstances, Judges Moffat and Larson held that the trial judge should have furnished an interpreter. Judge Wolfe held that no error was committed under the circumstances there present. Judge McDonough, in his opinion, sets out that counsel for accused stated to the court that accused "could not understand all the English that is being said, and he is handicapped," and then stated: "I am of the opinion that the court should have at that point invited inquiry or have made such into the defendant's ability to understand English-speaking witnesses." Judge McDonough then expressed uncertainty in his own mind as to certain phases of the question, and concluded his discussion of the point in this language. "Nevertheless the court should have, in my opinion, invited an inquiry into the suggested handicap of defendant before proceeding."

Judge Pratt concurred in the reversal of the judgment for the reasons given by Judge McDonough.

With the foregoing analysis of the four opinions in Vasquez's case we are not inclined to think our statement as to

what was the majority holding does serious violence to the record.

It will be noted that in Vasquez's case it is shown that he could speak English brokenly, and could understand some English. So far as we can ascertain, the holdings of the various courts seem to be fairly uniform that when such condition arises it becomes necessary for the court, in the exercise of his discretion, to make inquiry to ascertain whether accused's rights will be safeguarded in the absence of an interpreter. In the case now before us no such condition or situation was present. In the bill of exception bringing the question forward it is certified that appellant "does not speak or understand English" and therefore it was requested that an interpreter be furnished to translate into Spanish the testimony which was being given in English and that this was "necessary to the defendant's proper understanding of the matters being related." No question is present as to the extent of appellant's knowledge of English, hence no necessity of inquiry about the matter. It is plainly certified that he neither spoke nor understood the language in which evidence was being given.

Many phases of the question discussed have been considered in various cases annotated in the 140 A. L. R. (supra) and in other cases to which we have been referred which would demand consideration whenever presented, but as it here appears in the record our opinion on appellant's motion for rehearing still reflects our best judgment.

The State's motion for rehearing is overruled.