77,036
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/9/2015 12:00:00 AM
Accepted 11/18/2015 12:46:52 PM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

No. AP-77,036

FILED IN
COURT OF CRIMINAL APPEALS

November 18, 2015

ABEL ACOSTA, CLERK

**JUAN BALDERAS**
  *Appellant*,


**v.**


**THE STATE OF TEXAS**

On Direct Appeal from the 179th District Court of Harris, Texas; Cause No. 1412826.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS IS A DEATH
PENALTY CASE

---

# APPELLANT'S POST-SUBMISSION BRIEF

---

ORAL ARGUMENT RECEIVED 10/07/2015

**R. Scott Shearer**
TBA No. 00786464
917 Franklin, Suite 320
Houston, Texas 77002
(713) 254-5629
(713) 224-2889 FAX
*ShearerLegal@Yahoo.com*

**Attorney for Appellant
(court-appointed)**

November 7, 2015

# INDEX OF AUTHORITIES

**Page**

**CASES**

*Beall v. Spear*, 106 Kan. 690, 189 P. 938 (Kan. 1920)..............................................10

*Blair v. State*, 511 S.W.2d 277 (Tex. Cr. App. 1974)...............................................18

*Blake v. State*, 365 S.W.2d 795 (Tex. Cr. App.1963)...............................................18

*Coronado v. State*, 351 S.W.2d 315, 329 (Tex. Cr. App. 2011) .................... 6, 8, 15

*Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004) ...............................5

*Diaz v. State*, 491 S.W.2d 166 (Tex. Cr. App. 1973) ................................................9

*Flores v. State*, 509 S.W.2d 580 (Tex. Cr. App. 1974) .............................................9

*Garcia v. State*, 151 Tex.Cr.R. 593, 210 S.W.2d 574 (1948)..................................15

*Hartsock v. State*, 322 S.W.3d 775 (Tex. App. - Fort Worth 2010, no pet.)...........16

*Kissinger v. State*, 126 Tex.Cr.R. 182, 70 S.W.2d 740 (1934)................................18

*Marras v. State*, 741 S.W.2d 395 (Tex. Cr. App.1987), *overruled on other grounds*,

   *Garrett v. State*, 851 S.W.2d 853 (Tex. Cr. App. 1993)......................................16

*Maryland v. Craig*, 497 U.S. 836 (1990)...........................................................5, 6

*Miller v. State,* 177 S.W.3d 1 (Tex. App. - Houston [1st Dist.] 2004, no pet.).........9

*People v. Rivera*, 15 A.D.3d 859, 788 N.Y.S.2d 802 (N.Y.App.Div.2005), *leave to*

   *appeal denied* ..................................................................................................10

*Simmons v. State*, 622 S.W.2d 111 (Tex. Cr. App. 1981) .......................................16

*State v. Faafiti*, 54 Haw. 637, 513 P.2d 697 (1973) ...................................................11

*Thomas v. State*, 841 S.W.2d 399 (Tex. Cr. App. 1992) ...........................................18

*Torres v. State*, 116 S.W.3d 208 (Tex. App. - El Paso 2003, no pet.).....................16

*Wood v. State*, 486 S.W.2d 771 (Tex. Cr. App. 1972) .............................................17

**STATUTES**
TEX. CRIM. PROC. CODE ANN. art. 38.30.......................................................... 10, 15

**OTHER AUTHORITIES**
Arthur Train, *The Prisoner at the Bar; sidelights on the administration of criminal justice* 239 (1908)......................................................................................8

**TREATISES**
WIGMORE ON EVIDENCE (Chadbourn Ed. 1970), §812(6), p. 283 ..................17

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

No. AP-77,036

**JUAN BALDERAS**
*Appellant*,

**v.**

**THE STATE OF TEXAS**

On Direct Appeal from the 179th District Court of Harris, Texas; Cause No. 1412826.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
THIS IS A DEATH PENALTY CASE

---

## APPELLANT'S POST-SUBMISSION BRIEF

---

ORAL ARGUMENT RECEIVED 10/07/2015

**JUAN BALDERAS**, by and through counsel on appeal, files this his Post-Submission Brief for Appellant. Appellant seeks to provide further briefing based upon the questions posed by the Court at oral argument.[1] In support of his prayer for reversal he would respectfully show the Court the following:

---

[1] The questions presented are subject to undersigned counsel's memory of the event and may be rephrased or paraphrased.

3

# QUESTIONS PRESENTED

QUESTION NUMBER ONE: WHAT ROLE DOES RELIABILITY PLAY IN A RIGHT TO CONFRONTATION ANALYSIS?

QUESTION NUMBER TWO: DOES THE UNITED STATES SUPREME COURT ALLOW SOME ELEMENTS OF CONFRONTATION TO BE DISPENSED WITH AND YET STILL PASS CONSTITUTIONAL MUSTER?

QUESTION NUMBER THREE: WHAT IS THE STANDARD TO DETERMINE WHETHER AN INTERPRETER SHOULD BE APPOINTED FOR A WITNESS?

QUESTION NUMBER FOUR: HOW FLUENT IN ENGLISH MUST A WITNESS BE BEFORE AN INTERPRETER IS DEEMED UNNECESSARY?

QUESTION NUMBER FIVE: A WITNESS' ABILITY TO SPEAK ENGLISH IS NOT THE SAME AS SAYING AN INTERPRETER IS UNNECESSARY, IS IT?

QUESTION NUMBER SIX: WOULD ALLOWING A WITNESS TO SPEAK IN THE LANGAUGE OF THEIR PREFERENCE ALLOW THEM TO "GAME THE SYSTEM" AND THEREBY IMPEDE THE DUE ADMINISTRATION OF JUSTICE?

QUESTION NUMBER SEVEN: WHO IS IN THE BEST POSITION TO DETERMINE WHETHER AN INTERPRETER SHOULD BE APPOINTED?

QUESTION NUMBER EIGHT: SHOULD THE AUDIOTAPE OF WENDY BARDALES' POLICE INTERVIEW HAVE BEEN ADMITTED AS DEMONSTRATIVE EVIDENCE?

QUESTION NUMBER NINE: DOES AN AUDIOTAPE EXIST OF THE ENTIRE TRIAL?

QUESTION NUMBER ONE RESTATED: WHAT ROLE DOES RELIABILITY PLAY IN A RIGHT TO CONFRONTATION ANALYSIS?

In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004) the Supreme Court stated that, "the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence." *Crawford*, 541 U.S. at 61. According to the Supreme Court, "The Clause's central purpose, to ensure the reliability of the evidence against a defendant by subjecting it to rigorous testing in an adversary proceeding before the trier of fact, is served by the combined effects of the elements of confrontation: physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 846 (1990). The Confrontation Clause does not demand that a particular piece of evidence be reliable. Rather, it demands a particular trial mechanism [cross-examination] be employed to try and assure such reliability. "[I]t is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . ." *Crawford*, 541 U.S. 36, 61-62.

QUESTION NUMBER TWO RESTATED: DOES THE UNITED STATES SUPREME COURT ALLOW SOME ELEMENTS OF CONFRONTATION TO BE DISPENSED WITH AND YET STILL PASS CONSTITUTIONAL MUSTER?

In *Maryland v. Craig*, 497 U.S. 836, 846 (1990) the Supreme Court held that a special closed circuit television procedure used to protect a vulnerable child witness in a sexual abuse case satisfied the requirements of the Confrontation Clause.  Maryland's statutory procedure prevents a child witness from seeing the defendant as he or she testifies against the defendant at trial.  The Supreme Court found it significant, however, that Maryland's procedure preserved all of the other elements of the confrontation right besides actual face-to-face confrontation. *Maryland v. Craig*, 497 U.S. at 851.  The Court held that the Maryland procedure was "functionally equivalent to that accorded live, in-person testimony." *Id*.  While holding that some component of confrontation might be dispensed with in special circumstances, the Court cautioned that these circumstances would be rare:  "That the face-to-face confrontation requirement is not absolute does not, of course, mean that it may easily be dispensed with." *Maryland v. Craig*, 497 U.S. at 850.[2]  Even a

_____

[2] According to this Court's opinion in *Coronado v. State*, 351 S.W.2d 315, 321 (Tex. Cr. App. 2011) the Supreme Court has nibbled *Maryland v. Craig* "into Swiss cheese" by repeating the categorical nature of the right to confrontation in its more recent cases.

partial denial of confrontation must have a compelling government interest to pass constitutional muster. *See Maryland v. Craig*, 497 U.S. 836, 846 (1990).

In the present case, the trial court dispensed with the trier of fact's ability to observe the demeanor of Wendy Bardales by allowing Wendy Bardales to testify through an interpreter, though she spoke English. The district attorney, while acknowledging that Wendy Bardales spoke English with sufficient comprehension, asked the trial court to allow her to testify in Spanish because she was more comfortable speaking Spanish:

> In this particular case, the witness has already indicated that although she does understand the English language and can read it and can speak it, she is more comfortable and more certain about what her understanding of everything is in the Spanish language. And that's the reason that the State is requesting an interpreter in this case.

(RR XXVI at 5-10).

A witness giving testimony has no right to speak in the language of their preference or to be comfortable. In fact, cross-examination is supposed to be *uncomfortable*. "The word 'confront,' after all, also means a clashing of forces or ideas, thus carrying with it the notion of adversariness." *Maryland v. Craig*, 497 U.S. at 845. While the comfort of a witness is a valid concern for trial courts,[3] this concern does not rise to the level of a constitutional amendment. "There is no

---

[3] As a matter of decorum and simple politeness.

'balancing' the defendant's constitutional right of confrontation and cross-examination against other social policies, even compelling ones." *Coronado v. State*, 351 S.W.2d 315, 329 (Tex. Cr. App. 2011). Whatever sympathies members of this Court might have for a witness asked to testify in a non-native language, the comfort of a witness must always give way to the constitutional mandate that there be as full and complete a confrontation as possible. Wendy Bardales was a testifying adult and not a vulnerable victim as was the witness in *Maryland v. Craig*. Because no compelling government interest presented itself in this case, the trial court erred by diminishing Appellant's right to confrontation.[4]

---

[4] In his book *The Prisoner at the Bar*, lawyer and author Arthur Train wrote that, "It is also practically impossible to cross-examine through an interpreter, for the whole psychological significance of the answer is destroyed. Ample opportunity being given for the witness to collect his wits and carefully frame his reply." Arthur Train, *The Prisoner at the Bar; sidelights on the administration of criminal justice* 239 (1908).

QUESTION NUMBER THREE RESTATED: WHAT IS THE STANDARD TO DETERMINE WHETHER AN INTERPRETER SHOULD BE APPOINTED FOR A WITNESS?

QUESTION NUMBER FOUR RESTATED: HOW FLUENT IN ENGLISH MUST A WITNESS BE BEFORE AN INTERPRETER IS DEEMED UNNECESSARY?

In past cases this Court has set out the standards for determining whether an interpreter is necessary. In *Diaz v. State*, the Court found no reversible error in failing to appoint interpreter because there was ample evidence that the defendant understood and communicated in the English language **reasonably well**. *Diaz v. State*, 491 S.W.2d 166, 168 (Tex. Cr. App. 1973) (emphasis added); *Compare Miller v. State,* 177 S.W.3d 1, 5 (Tex. App. - Houston [1st Dist.] 2004, no pet.), wherein the defendant "could not speak English well enough to be reliable" and "could not be effectively cross-examined [as] he could neither understand the questions, nor repeat many answers that [had] been attributed to him by the investigating officer."

In *Flores v. State*, this Court held that: "[t]he mere fact that an accused may be more fluent in speaking Spanish does not, in and of itself, make it incumbent upon a trial court to appoint an interpreter for an accused who **speaks and understands** the English language." *Flores v. State*, 509 S.W.2d 580, 581 (Tex. Cr. App. 1974) (emphasis added); *Baltierra v. State,* 586 S.W.2d 556, 559 (Tex. Cr. App. 1979) (". . . we hold that when it is made known to the trial court that an accused does not **speak and understand** the English language an interpreter must be furnished to

9

translate to the accused the trial proceedings . . .") (emphasis added); *Accord Beall v. Spear*, 106 Kan. 690, 189 P. 938 (Kan. 1920) ("The request was refused, the judge saying that he had reliable information that the witness could **speak and understand** the English language. The statute authorizes the use of an interpreter 'whenever necessary.' (citation omitted). No showing was made that such a situation had arisen.").

In terms of Texas statutes, Article 38.30 of the Code of Criminal Procedure provides for an "understand and speak" standard:

> When a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding, it is determined that a person charged or a witness does not **understand and speak** the English language, an interpreter must be sworn to interpret for the person charged or the witness.

TEX. CRIM. PROC. CODE ANN. art. 38.30. (emphasis added).

Other states have similar standards to that of Texas. The New York Appellate Division has stated that, "there is no need to appoint an interpreter merely because English is not defendant's first language. Only when a defendant exhibits an inability to understand the proceedings or to communicate with counsel must a court inquire whether an interpreter is needed." *People v. Rivera*, 15 A.D.3d 859, 788 N.Y.S.2d 802, 803 (N.Y.App.Div.2005), *leave to appeal denied*. The Hawaii Supreme Court has held that where the record demonstrates that the defendant had a sufficient command of English to understand the questions asked and answers

10

given, the court's failure to appoint an interpreter is not error. *State v. Faafiti*, 54 Haw. 637, 513 P.2d 697, 699 (1973).

In the case at bar it matters not whether the benchmark is the "reasonably well" standard of *Diaz* or the "understand and speak" standard of Article 38.20 and *Flores* - Wendy Bardales' English skills satisfied them both. The State conceded as much:

> In this particular case, the witness has already indicated that although **she does understand the English language and can read it and can speak it**, she is more comfortable and more certain about what her understanding of everything is in the Spanish language.

(RR XXVI at 5-10)(emphasis added).

QUESTION NUMBER FIVE RESTATED:  A WITNESS' ABILITY TO SPEAK ENGLISH IS NOT THE SAME AS SAYING AN INTERPRETER IS UNNECESSARY, IS IT?

The answer to the questions depends on the speaking abilities of the witness. A witness who only has a limited ability to speak English may very well need and require the assistance of an interpreter.  However, for a witness who can speak in English "reasonably well" or "speaks and understands" English or speaks "fluently," their ability to speak English equates to an interpreter being unnecessary.  They have demonstrated an ability that exceeds the standard that the law requires.  *See Flores*; *Baltierra*; *Diaz, supra*.   A witness has no right to testify in the language of their choosing or in a language in which they feel more comfortable.  In the present case the State conceded that the witness could speak and understand English at the time her testimony was given.  A witness that *does* speak English should be *required* to speak English.

QUESTION NUMBER SIX RESTATED: WOULD ALLOWING A WITNESS TO SPEAK IN THE LANGAUGE OF THEIR PREFERENCE ALLOW THEM TO "GAME THE SYSTEM" AND THEREBY IMPEDE THE DUE ADMINISTRATION OF JUSTICE?

Allowing a defendant or witness to testify in the language of their choosing would cause absurd results. If comfort, preference, or being better able to communicate in a different language is the standard, chaos would surely ensue. There are approximately 7,102 known living languages. *See http://www.ethnologue.com/*. Are the courts of this State going to be required to provide 7,102 different interpreters for every language spoken on earth? Flying in interpreters from all over the United States and the nether regions of the world upon simple request of a witness would bankrupt most counties. Should the courts be required to pay the expense of flying in interpreters from Tahiti, for instance, if the defendant speaks fluent English but prefers Tahitian? What if the witness prefers to speak in one of the 38 forms of the Uralic language family; one of the 1257 languages of Austronesian; or because they prefer to speak in the Mapudungu language?

Allowing a defendant or witness to testify in the language of their choosing would also give such persons the ability to unnecessarily postpone or delay the trial. A witness who has previously spoken to all parties in English [like Ms. Balderas] might show up for Court and thereby claim the right to speak in a foreign language

13

through an interpreter.  One can imagine the utter chaos that such a rule would cause

if it were adopted.

QUESTION NUMBER SEVEN RESTATED: WHO IS IN THE BEST POSITION TO DETERMINE WHETHER AN INTERPRETER SHOULD BE APPOINTED?

Article 38.30 of the Code of Criminal Procedure references a "determination" being made to decide whether or not a witness, "does not understand and speak the English language. . . " TEX. CRIM. PROC. CODE ANN. art. 38.30. A trial court's decision whether or not to allow testimony through an interpreter is reviewed for an abuse of discretion. *See Baltierra v. State,* 586 S.W.2d 556, 557 (Tex. Cr. App. 1979) (The determination of whether an interpreter is necessary rests largely in the discretion of the trial court); *Garcia v. State*, 151 Tex.Cr.R. 593, 210 S.W.2d 574, 579 (1948) (the generally accepted rule concerning whether an interpreter is necessary rests largely in the discretion of the trial court).

While discretion properly rests in the trial court, that discretion is not unfettered. It can be abused, as it was in the present case. Faced with overwhelming evidence that the witness was fluent in English, coupled with the State's concession, the trial judge simply made the wrong call. The trial judge did not weight the competing interests correctly. The trial court admitted that Appellant's interests were more important, but overruled his objection, nevertheless. (RR XXVI at 5-10). This was error. "There is no 'balancing' the defendant's constitutional right of confrontation and cross-examination against other social policies, even compelling ones." *Coronado v. State*, 351 S.W.2d 315, 329 (Tex. Cr. App. 2011).

15

QUESTION NUMBER EIGHT RESTATED: SHOULD THE AUDIOTAPE OF WENDY BARDALES' POLICE INTERVIEW HAVE BEEN ADMITTED AS DEMONSTRATIVE EVIDENCE?

According to this Court, "Visual, real, or demonstrative evidence, regardless of which term is applied, is admissible upon the trial of a criminal case if it tends to solve some issue in the case and is relevant to the cause that is, if it has evidentiary value, i.e., if it sheds light on the subject at hand." *Simmons v. State*, 622 S.W.2d 111, 113 (Tex. Cr. App. 1981). "Demonstrative evidence has no independent relevance to the case but is offered to help explain or summarize the witness's testimony or to put events and conditions into a better perspective."

"Demonstrative evidence" is "evidence admitted to serve as a visual aid or illustration that meets the tests of relevancy and materiality, as well as the limitations imposed by Texas Rule of Evidence 403." *Hartsock v. State*, 322 S.W.3d 775, 779 (Tex. App. - Fort Worth 2010, no pet.). "Demonstrative evidence has no independent relevance to the case but is offered to help explain or summarize the witness's testimony or to put events and conditions into a better perspective." *Torres v. State*, 116 S.W.3d 208, 213 (Tex. App. - El Paso 2003, no pet.).

A trial court's discretion to permit the use of visual aids, charts, and video recordings during trial is well established. *Marras v. State*, 741 S.W.2d 395, 404-05 (Tex. Cr. App.1987), *overruled on other grounds*, *Garrett v. State*, 851 S.W.2d 853, 860 (Tex. Cr. App. 1993) (holding that a videotaped re-enactment of the

16

defendant's flight from the crime scene was admissible); *See Wood v. State*, 486 S.W.2d 771, 774 (Tex. Cr. App. 1972) (arm and hand signals described as demonstrative evidence).

To establish the relevancy of demonstrative evidence, the proponent must first authenticate it. *Torres*, 116 S.W.3d at 213. The proponent is then required to establish that the evidence is "fair and accurate" and that it helps the witness to demonstrate or illustrate his testimony. *Id*.

In the present case, Appellant offered into evidence the audio recording of Wendy Bardales' interview with Sgt. Ruland. (RR XXIX at 62-63). The purpose in offering the recording into evidence was to show the jury that Ms. Bardales spoke in English to Sergeant Ruland eight [8] years before the trial and that, therefore, her need of an interpreter was a ruse to explain her inconsistencies and to avoid cross-examination.[5] The audio recording was, therefore, demonstrative evidence of her speaking and auditory abilities both at the time of the offense and during the trial. The audio recording would have aided the jury in understanding to what extent

---

[5] Concerning the situation in which a witness falsely claims to need an interpreter, Dean Wigmore states the following:

"A witness who demands an interpreter on the ground of inability to speak English is *discredited* as a falsifier if it is shown that he is in fact able to speak it." (emphasis in original).

WIGMORE ON EVIDENCE (Chadbourn Ed. 1970), §812(6), p. 283.

Wendy Bardales spoke English so that the jury might compare her claims of a language barrier with her inconsistent statements.

The audiotape can also be fairly described as impeachment evidence. Impeachment evidence is that which disputes or contradicts other evidence. *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Cr. App. 1992) ("Impeachment evidence is that which is offered '... to dispute, disparage, deny, or contradict....' "). Admission of impeachment evidence is particularly admissible where the witness is the sole or chief witness of the State. *Blake v. State*, 365 S.W.2d 795, 796 (Tex. Cr. App.1963); *Kissinger v. State*, 126 Tex.Cr.R. 182, 70 S.W.2d 740, 742 (1934). Admission of impeachment evidence is particularly required where the question before the jury comes down to an issue of whether to believe the witness' version of the events or that of the accused. *Blair v. State*, 511 S.W.2d 277, 279 (Tex. Cr. App. 1974).

In the case at bar, admission of the audio tape would have impeached and contradicted Wendy Bardales' claim that her inconsistent answers were the result of a language barrier. Wendy Bardales' English language conversation with Sergeant Ruland occurred just after the murder. The audio tape would have discredited her completely. Had the jury been allowed to hear the taped conversation, the jury would have been made aware that the State's use of an interpreter was a mere subterfuge and that Wendy Bardales was lying about her alleged lack of proficiency in English. The audiotaped directly impeached her claim that she could not speak

18

English proficiently. The State's attempt to explain away the inconsistencies in Wendy Bardales' story as a "lack of communication" would have been exposed. Wendy Bardales was the State's only eyewitness to the murder and her credibility carried particular weight with the jury. We know this from two of their jury notes. (CR at 3295, 3297). Had the audio tape been allowed into evidence, it would have made the difference between conviction and acquittal.

QUESTION NUMBER NINE RESTATED:  DOES AN AUDIOTAPE
EXIST OF THE ENTIRE TRIAL?

Undersigned counsel posed this question to the official court reporter. According to her, an audio tape of the trial does exist with the exception of a few days where the recording device malfunctioned.

## PRAYER FOR RELIEF

**FOR THESE REASONS,** the Appellant prays the Honorable Court of Criminal Appeals will reverse his conviction and render a verdict of not guilty, or remand the case for a new trial and grant him such further relief to which he may be entitled.

Respectfully submitted,

By:   /s/ R. SCOTT SHEARER
**R. Scott Shearer**
TBA No. 00786464
917 Franiklin, Suite 320
Houston, Texas 77002
(713) 254-5629
(713) 224-2889 FAX
*ShearerLegal@Yahoo.com*

**Attorney for Appellant
(court-appointed)**

21

# CERTIFICATE OF COMPLIANCE WITH RULE 9.4(i)(3)

Certificate of Compliance with Type-Volume Limitations
and Typeface Requirements.

1.      This brief complies with the type-volume limitation of TEX. R. APP. PROC. 9.4(i)(2)(A) and (3) because:

This brief contains **3,266** words, excluding the parts of the brief exempted by TEX. R. APP. PROC. 9.4(i)(1).

2.      This brief complies with the typeface requirements of TEX. R. APP. PROC. 9.4(e) because:

this brief has been prepared in a conventional proportionally spaced typeface using Microsoft WORD 97 version 7.0 in Times New Roman 14 point type.

<u>/s/ R. SCOTT SHEARER</u>
**R. Scott Shearer**

**CERTIFICATE OF SERVICE**

I certify that a copy of this Post-Submission Brief for Appellant has been served upon the State of Texas by e-mailing a copy of same to the following parties at their respective addresses on this the 7th day of November, 2015:

A.D.A. CLINTON A. MORGAN
DISTRICT ATTORNEY'S OFFICE
APPELLATE DIVISION
1201 FRANKLIN, SUITE 600
HOUSTON, TX 77002
*Morgan_Clionton@dao.hctx.net*

/s/ R. SCOTT SHEARER
**R. Scott Shearer**