**Affirm and Opinion Filed June 10, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00939-CR

### OSCAR VLADIMIR HERNANDEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3
Dallas County, Texas
Trial Court Cause No. F18-24510-J**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Nowell

A jury convicted Oscar Vladimir Hernandez of murder and sentenced him to life imprisonment.[1]  In two issues, appellant argues the trial court erred by denying his motion to suppress the statement he made to police after he was arrested and by not providing an interpreter for him during the punishment phase of trial.  We affirm the trial court's judgment.

---

[1] Because appellant does not challenge the sufficiency of the evidence supporting the conviction, we only provide the facts relevant to the disposition of the appeal.  *See* TEX. R. APP. P. 47.1.

### A. Appellant's Statement to Police

In his first issue, appellant argues the trial court erred by denying his motion to suppress the statement he made to a detective after he was arrested because he did not understand his *Miranda* right to an attorney and, therefore, did not knowingly waive his right to have an attorney present when the detective questioned him. The State responds the trial court could have reasonably concluded appellant understood his right to an attorney because he initially invoked the right before he then decided to talk to the detective.[2]

#### 1. Legal Standard

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Martin v. State*, PD-0563-19, 2021 WL 1396413, at *5 (Tex. Crim. App. Apr. 14, 2021). "We give almost total deference to the trial court's findings of fact and review de novo the application of the law to the facts." *Id.* (quoting *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019)). We will

---

[2] The State also asserts appellant waived his complaint because he stated "no objection" when the statement was offered into evidence at trial and did not otherwise convey that he did not intend to waive his complaint. The Texas Court of Criminal Appeals has held that an adverse ruling on a pretrial motion to suppress evidence ordinarily will suffice to preserve error on appeal, and a defendant need not specifically object to the evidence when it is later offered at trial. *Thomas v. State*, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013). "But he must also take care not to affirmatively indicate that he has "no objection" to the evidence that he challenged in his pretrial motion to suppress when it is later offered at trial, for [the court of criminal appeals] has long held that such an affirmative statement constitutes a "waiver" of the right to raise on appeal the error that was previously preserved." *Id.* at 881-82. However, the court has clarified that this principle is "context-dependent," meaning that if the entire record plainly demonstrates the defendant did not intend, and the trial court did not construe, the "no objection" assertion to abandon the earlier preserved complaint, the complaint is not waived. *Id.* at 885. In this case, we need not decide whether appellant's statement of "no objection" waived the issue on appeal.

uphold the trial court's ruling if it is correct under any applicable theory of law and the record reasonably supports it. *Id.*

The Fifth Amendment precludes the government from compelling a criminal suspect to bear witness against himself. U.S. CONST. amend. V; *Pecina v. State*, 361 S.W.3d 68, 74-75 (Tex. Crim. App. 2012). In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court created safeguards to protect the privilege against self-incrimination in the inherently coercive atmosphere of custodial interrogations. *Pecina*, 361 S.W.3d at 75. In keeping with those safeguards, police officers must give *Miranda* warnings to a person who is in custody before questioning him. *Id.* "Only if the person voluntarily and intelligently waives his *Miranda* rights, including the right to have an attorney present during questioning, may his statement be introduced into evidence against him at trial." *Id.*

The State has the burden to show that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). The State must prove waiver by a preponderance of the evidence. *Id.*

To evaluate whether a person knowingly, intelligently, and voluntarily waived his *Miranda* rights, we look to the standard articulated by the Supreme Court in *Moran v. Burbine*, 475 U.S. 412 (1986). *Id.* at 25. Initially, a person's relinquishment of his right to have counsel during an interrogation must have been voluntary "in the sense that it was the product of a free and deliberate choice rather

–3–

than intimidation, coercion, or deception." *Id.* (quoting *Burbine*, 475 U.S. at 421). In this case, appellant does not contend he was intimidated, coerced, or deceived. Rather, he concedes "there is nothing in the record that indicates Appellant did not make a free and deliberate choice to waive his right to counsel."

In addition to being voluntary, a person must have waived the right to interrogation counsel "with full awareness of both the nature of the right [he was abandoning] and the consequences of the decision to abandon it." *Id.* (quoting *Burbine*, 475 U.S. at 421). "Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension" may a court properly conclude that a defendant knowingly, intelligently, and voluntarily waived his right to interrogation counsel. *Id.* (internal quotation marks omitted). The totality-of-the-circumstances approach requires consideration of all the circumstances surrounding the interrogation, including the defendant's experience, background, and conduct. *Id.* (citing *Fare v. Michael C.*, 442 U.S. 707, 725 (1979), and *North Carolina v. Butler*, 441 U.S. 369, 375–76 (1979)). "[A] defendant's conduct—namely, willingly talking with investigators—can demonstrate a knowing, intelligent, and voluntary waiver of his Miranda rights." *Id.* at 27, n.7.

### 2. *Applicable Facts*

After appellant was arrested, he was interviewed by Detective Jeffrey Hammett with the Garland Police Department. Because appellant speaks Spanish

–4–

and Hammett does not, Hammett asked Detention Officer Reyes who speaks Spanish fluently to act as an interpreter during the interview. Hammett provided and Reyes translated the *Miranda* warnings for appellant, and appellant stated he did not want to talk to them and he wanted an attorney. The interview ended immediately, and Hammett returned to his office while appellant was taken to the jail.

Approximately fifteen or twenty minutes later, appellant told Reyes he wanted to talk and "clear everything up." Hammett was contacted and was told appellant changed his mind and wanted to talk. Hammett contacted the city attorney for guidance, and the city attorney advised Hammett to start the second interview by stating Hammett understood appellant wanted to talk without an attorney and then give *Miranda* warnings again.

Upon walking into the interview room and before reading the *Miranda* warnings again, Hammett stated he understood appellant wanted to talk without his attorney, and appellant confirmed this was correct. Hammett then read the *Miranda* warnings again and Reyes translated them for appellant. A transcript of the interview shows that after Hammett read the *Miranda* rights to appellant, appellant asked in Spanish: "When it says that the attorney may be here with me during the questions and all that. . ." Reyes responded to appellant: "Yes, that is when you are going to a trial. When you go to court, they're going to give you an attorney." Reyes did not translate appellant's question or his response for Hammett's benefit.

After Reyes answered appellant's question, appellant stated he was going to talk. Reyes asked again whether appellant wanted to talk and appellant confirmed he did. Reyes told appellant to initial each of the *Miranda* waivers and sign the form, which was in Spanish. Before appellant signed the form, however, Hammett told appellant he had a right to an attorney and did not have to talk. Hammett testified he reiterated appellant's right to a lawyer because appellant previously invoked the right. Appellant proceeded to initial and sign the form, and the interview went forward.

Hammett interviewed appellant for some period of time. However, when Hammett confronted appellant about not being truthful, appellant stated he wanted his attorney. The interview ended, and Hammett never spoke to appellant again.

During the motion to suppress hearing, the *Miranda* warning and videos of the interviews (along with a translation) were admitted. After considering the evidence, the trial court denied the motion and explained its rationale on the record. The judge stated it was clear that appellant understood the *Miranda* warnings. Subsequently, "there was an issue between [Reyes] and [appellant] where he asked about whether he could have an attorney present . . . And there was . . . some confusing information given by [Reyes], but [appellant] still chose to proceed . . . in his interview" until such time as appellant decided he no longer wanted to talk to Hammett. The trial judge stated it was "clear to me that [appellant] understood his

rights" because appellant exerted those rights on two separate occasions. "So he wasn't confused about his rights."

### 3.  Analysis

Appellant argues he did not have the requisite level of comprehension to knowingly and intelligently waive his right to counsel because Reyes's response to his question about his right to counsel was incorrect and that incorrect response caused a misunderstanding of the nature of the right he abandoned. We disagree.

Based on this record, the trial court could have concluded the totality of the circumstances surrounding the interrogation shows appellant understood his right to counsel and waived it knowingly and intentionally. When appellant was initially detained, Hammett read the *Miranda* rights to him, and appellant opted to exercise his right to remain silent and stated he wanted an attorney. After that, appellant decided he wanted to "clear everything up" and talk to Hammett. Hammett again provided *Miranda* warnings to appellant in Spanish and again told appellant that he had a right to counsel. Appellant initialed next to each written warning, each of which was written in Spanish, and signed the form. The interview began and continued until Hammett told appellant Hammett did not believe appellant was telling the truth. Appellant then stated he wanted his attorney, and the interview ended.

Appellant exercised his right to counsel twice: once when he initially was detained and a second time when he was challenged about his truthfulness. The

second time he exercised the right occurred after Reyes responded to his question about when counsel would be provided to appellant. The repeated warnings given to appellant and his actions show he understood his right to remain silent and his right to counsel. Although Reyes's response to appellant's question may have been incorrect, we conclude that statement alone and viewed in context with all the evidence is not sufficient to conclude the trial court erred by denying appellant's motion to suppress. We overrule Appellant's first issue.

## B. Spanish-Language Interpreter

In his second issue, appellant argues his right to confront witnesses against him pursuant to the Confrontation Clause was violated because the only interpreter present during the punishment phase of trial acted as an interpreter for the Spanish speaking witness. The Sixth Amendment to the Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him.[3] *Garcia v. State*, 149 S.W.3d 135, 140 (Tex. Crim. App. 2004) (citing U.S. CONST. AMEND. VI). "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom during his trial"; the right

---

[3] The Texas Constitution also grants a defendant the right to confront the witnesses against him. *See* TEX. CONST. art. I, § 10. Although appellant cites the Texas Constitution to support his argument, he fails to distinguish his state constitutional argument from his federal constitutional argument. Therefore, we do not address any argument based on the Texas Constitution. *See Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) (citing *Lagrone v. State*, 942 S.W.2d 602, 612 (Tex. Crim. App. 1997) (declining to address state constitutional claims where the appellant did not distinguish them from or argue that the Texas Constitution provides greater protections than the federal constitution)).

to be present includes the right to understand the testimony of the witnesses. *Id.* The Confrontation Clause requires the trial court provide an interpreter to an accused who does not understand English. *Id.* at 141. The Texas Court of Criminal Appeals explained:

> The constitutional right of confrontation means something more than merely bringing the accused and the witness face to face; it embodies and carries with it the valuable right of cross-examination of the witness. Unless appellant was in some manner, either through his counsel or an interpreter, afforded knowledge of the testimony of the witness, the right of cross-examination could not be exercised by him.

*Id.* (quoting *Garcia v. State*, 151 Tex. Crim. 593, 601, 210 S.W.2d 574, 580 (1948)).

We review a trial court's decision to appoint an interpreter for abuse of discretion. *See Balderas v. State*, 517 S.W.3d 756, 777-78 (Tex. Crim. App. 2016). Likewise, whether an accused receives adequate interpretive services is a matter within the trial court's discretion. *Linton v. State*, 275 S.W.3d 493, 500 (Tex. Crim. App. 2009). The trial court's discretion is "wide" and "[t]he question on appeal is not whether the 'best' means of interpretive services were employed, but whether the services that were actually employed were constitutionally adequate such that the defendant could understand and participate in the proceedings." *Id.*

In this case, the trial court judge stated she understood appellant did not speak or understand English; appellant speaks Spanish. The record shows several Spanish language interpreters participated in the pre-trial and trial proceedings, and

–9–

presumably acted as interpreters for appellant.[4]  At the punishment phase of trial, the State presented one witness, Mavel Degaldo, who spoke Spanish.[5]  When the State called Degaldo, the judge asked whether she would need an interpreter, and the State confirmed she would.  An interpreter who previously participated in several days of the proceedings was sworn in, and Degaldo began testifying.  A separate interpreter was not provided to appellant during Degaldo's testimony.  Following Degaldo's testimony, the State rested.

On appeal, appellant essentially argues the trial court abused its discretion by failing to provide an additional Spanish language interpreter for him during Degaldo's testimony.  We have found no authority requiring separate interpreters for the witness and the defendant when both the witness and the defendant do not speak English, but speak the same language.  Degaldo testified in Spanish, a language appellant speaks and understands, and appellant does not argue he did not understand the testimony.  While there may be an argument that providing appellant

---

[4] The record shows interpreters were present during pre-trial and trial proceedings.  The record does not clearly state that the interpreter only served to assist appellant.  However, based on appellant's complaint on appeal, which is limited to the punishment phase of trial, we assume the interpreters interpreted the proceedings only on behalf of appellant up until the punishment phase of trial.

[5] Appellant's counsel also called two witnesses during the punishment phase, and appellant argues on appeal that his confrontation rights were violated when no Spanish language interpreter was provided for him during testimony offered by these two witnesses.  The Confrontation Clause guarantees that "in all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses *against* him."  U.S. CONST. AMEND. VI (emphasis added).  Clearly, the witnesses called by appellant's counsel were not witnesses against him and appellant does not contend as much on appeal.  As such, appellant clearly was not denied his right to confrontation or his right to cross-examination as to these witnesses.  *See Drew v. State*, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987).  Additionally, we note those two witnesses were appellant's brother and sister and they each testified in Spanish, which is a language appellant speaks and understands.

with his own interpreter would have been preferable, we do not consider whether the best means of interpretive services were provided, but rather whether the interpretive services "were constitutionally adequate such that the defendant could understand and participate in the proceedings." *See Linton*, 275 S.W.3d at 500. Appellant does not assert and the record does not show that appellant was unable to understand and participate in the proceedings when Degaldo testified in Spanish, a language he speaks and understands. Therefore, based on this record, we conclude the trial court did not abuse its discretion by not providing appellant with his own Spanish language interpreter when Degaldo testified in Spanish, the same language appellant speaks and understands. *See id.*; *see also Orellana v. State*, 381 S.W.3d 645, 658 (Tex. App.—San Antonio 2012) (pet. ref'd).

Even if the failure to provide a separate interpreter was constitutionally infirm, the record does not establish such error was harmful. *See Orellana*, 381 S.W.3d at 659. Nothing in the record demonstrates that at any time during Degaldo's testimony there was a matter appellant did not understand that affected his opportunity to confront Degaldo and defend himself. *See id.*

In his second issue, appellant also argues he suffered ineffective assistance of counsel because he was not provided with his own Spanish language interpreter during the punishment phase and, thus, there was no interpreter to assist him with consulting with his attorney during the proceeding. Sixth Amendment ineffective assistance of counsel claims require a defendant to show his counsel was deficient

and that counsel's deficient performance prejudiced him. *Ex Parte Garza*, No. WR-78, 113-01, 2021 WL 1397860, at \*4 (Tex. Crim. App. Apr. 14, 2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *see* U.S. CONST. AMEND. VI. A defendant can establish deficient performance by showing that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation." *Garza*, 2021 WL 1397860, at \*4 (citing *Strickland*, 466 U.S. at 687–88, 690 and *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)). In analyzing this, "we must make every effort to 'eliminate the distorting effects of hindsight.'" *Id.* (quoting *Wiggins*, 539 U.S. at 523). To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

Appellant argues he could not consult with his attorney when he did not have his own interpreter. This assertion is not supported by the record. Although appellant filed a motion for new trial, that motion did not allege ineffective assistance and no hearing was held on the motion; therefore, the record is silent about whether appellant and his counsel were able to communicate during Degaldo's testimony. Further, the silent record does not show whether appellant suffered prejudice or the result of the proceedings would have been different. Based on this

–12–

silent record, appellant has not established the elements of ineffective assistance of counsel.

We overrule appellant's second issue.

### C.    Conclusion

We affirm the trial court's judgment.

/Erin A. Nowell//

ERIN A. NOWELL
JUSTICE

190939f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

OSCAR VLADIMIR
HERNANDEZ, Appellant

No. 05-19-00939-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 3, Dallas County, Texas
Trial Court Cause No. F18-24510-J.
Opinion delivered by Justice Nowell.
Justices Osborne and Pedersen, III
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 10th day of June, 2021.