**AFFIRMED and Opinion Filed September 7, 2021**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00826-CR**

**EX PARTE KOFFI SEMEGNON DOKE**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-80876-2013**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Carlyle
Opinion by Justice Carlyle

Koffi Semegnon Doke appeals the trial court's order denying relief on his post-conviction application for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.072. Appellant Doke contends the trial court erred by applying the wrong legal standards in evaluating his claim that his guilty plea was entered involuntarily due to ineffective assistance of counsel. We affirm.

BACKGROUND

Appellant is a citizen of Togo admitted into the United States as a lawful permanent resident in 2008. On November 18, 2012, appellant used a debit card to make purchases without the cardholder's consent at Wal-Mart stores in Plano and

Allen, including one where he worked, and used his employee discount card. Store employees identified appellant on security video as the person making the charges.

When questioned by police, appellant admitted making the charge, but explained he had permission from a friend he knew only as Talon. According to appellant, Talon asked him for $200 and offered him the debit card to use in exchange. Talon told him the debit card belonged to Talon's girlfriend. Because he is illiterate, appellant said he was unable to read the name on the card. Appellant took the card because Talon was a trusted friend. After the police became involved, Talon refused to take any of appellant's telephone calls.

In 2013, appellant entered a negotiated guilty plea to the state jail felony offense of debit card abuse, and the trial court followed the parties' agreement, placing him on deferred adjudication community supervision for three years and imposing a $250 fine. *See* TEX. PENAL CODE § 32.31. Appellant waived his right to appeal as part of the agreement. The United States government later initiated removal proceedings against appellant.

Appellant then filed this application for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.072. To support his claim that he received ineffective assistance of counsel, appellant filed a copy of the reporter's record from the plea hearing, his affidavit, Adamou Nambouri's affidavit, affidavits from two other friends, documentation of the removal proceedings, and police reports describing the offense. The trial court conducted a hearing on appellant's writ application.

Appellant did not testify nor did he call any witnesses. The State called counsel to testify. After hearing counsel's testimony and taking the matter under advisement, the trial court denied relief and entered findings of fact and conclusions of law. *See* TEX. CODE CRIM. PROC. art. 11.072, § 7(a).

STANDARD OF REVIEW

In reviewing the trial court's ruling on a habeas claim, we review the record in the light most favorable to the trial court's ruling and must uphold the trial court's ruling absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016).

Applicants for post-conviction habeas corpus relief must prove their claims by a preponderance of the evidence. *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016). The trial court is the sole finder of fact, and "we afford almost total deference to a trial court's factual findings when they are supported by the record, especially when those findings are based upon credibility and demeanor." *Id*. at 42. We defer to the trial court's fact findings supported by the record even when such findings are based on affidavits rather than live testimony. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). If, however, the trial court's determinations are questions of law, or mixed questions of law and fact that do not

–3–

turn on an evaluation of witnesses' credibility and demeanor, then we review them de novo. *Ex parte Weinstein*, 421 S.W.3d 656, 664 (Tex. Crim. App. 2014).

ANALYSIS

To prevail on a claim that he entered an involuntary guilty plea due to ineffective assistance of counsel, appellant must satisfy a two-pronged standard showing (1) counsel rendered deficient performance and (2) appellant suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Torres*, 483 S.W.3d at 43.

The first prong requires appellant to show counsel's performance was deficient in that it failed to meet an objective standard of reasonableness under prevailing professional norms. *Ex parte Bowman*, 533 S.W.3d 337, 349–50 (Tex. Crim. App. 2017); *see also Strickland*, 466 U.S. at 687–88. In evaluating counsel's performance under the first prong, we assess the reasonableness of counsel's performance under the circumstances of the particular case viewed at the time counsel rendered assistance. *Bowman*, 533 S.W.3d at 350. We presume counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 350 (quoting *Strickland*, 466 U.S. at 690). Counsel's deficient performance must be affirmatively demonstrated on the record and not require retrospective speculation. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). We judge the totality of counsel's representation rather than focusing narrowly on isolated acts or omissions, and evaluate counsel's performance

from counsel's viewpoint at the time of representation without the benefit of hindsight. *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012).

Appellant first argues that trial counsel rendered ineffective assistance by failing to advise him about the immigration consequences of his plea and by allowing him to plead guilty without understanding the consequences such a plea would have on his immigration status. In his opening brief, appellant complains that trial counsel should have reset the plea hearing to ensure he understood the consequences of the plea. In the alternative, appellant argues counsel was ineffective for not securing an interpreter for the hearing. In his reply brief, appellant complains that counsel's immigration advice was inconsistent.[1]

The Sixth Amendment right to effective assistance of counsel requires counsel to correctly advise non-citizen clients about potential immigration law consequences, including deportation, exclusion from admission, and denial of naturalization. *Padilla v. Kentucky*, 559 U.S. 356, 366–67 (2010). When, as here,[2] a criminal defendant has committed an offense that would trigger mandatory

---

[1] We do not consider new issues raised in reply briefs, but we may consider arguments and authorities raised in a reply brief if they are related to the arguments in the original brief. *See Chambers v. State*, 580 S.W.3d 149, 161 (Tex. Crim. App. 2019). Appellant's argument about the consistency of counsel's advice is part of his overarching ineffectiveness issue and is apparent on the face of the record. Because we favor merits determinations when possible, we consider it to be sufficiently related to the original argument.

[2] Credit card abuse is a crime involving moral turpitude. *See Balogun v. Ashcroft*, 270 F.3d 274, 278 (5th Cir. 2001) (convictions for illegal possession of credit cards, fraudulent use of credit cards, and forgery were crimes involving moral turpitude); 8 U.S.C. § 1227(a)(2)(A)(i); *see also Ex parte Pei Wen Chen*, No. 01-13-01043-CR, 2014 WL 3697932, at *3 (Tex. App.—Houston [1st Dist.] July 24, 2014, no pet.) (mem. op., not designated for publication). Placement on deferred adjudication in Texas is considered a conviction for purposes of federal immigration law. *See Moosa v. I.N.S.*, 171 F.3d 994, 1005–06 (5th Cir. 1999); *Guerrero*, 400 S.W.3d at 588 & n.52; *see also* 8 U.S.C. § 1101(a)(48)(A).

deportation upon conviction, counsel must correctly advise his client that the client faces mandatory deportation upon conviction or even placement on deferred adjudication. *Padilla*, 559 U.S. at 369; *Torres*, 483 S.W.3d at 44–45. It is not sufficient for counsel to advise appellant that he might be deported and recommend that he seek advice from an immigration lawyer. *Torres*, 483 S.W.3d at 45. If it is clear that being placed on deferred adjudication for the charged offense will result in removal proceedings, counsel's advice regarding those immigration consequences must be equally clear. *See Padilla*, 559 U.S. at 369.

Appellant makes much of two portions of the plea colloquy to support his claim that he did not understand the plea proceeding, as follows:

[Trial Court]: Have you ever been confined to a mental institution? A hospital that would be designed to treat you for any mental health infirmities?

[Appellant]: Yes, sir.

[Trial Court]: Have you been to a mental health hospital before?

[Counsel]: Have you ever been diagnosed with any type of mental illness?

[Appellant]: No, no.

[Trial Court]: Have you ever been incompetent, found incompetent by any court? Has any other judge ever said you're not fit to handle your own business?

[Appellant]: No.

[Trial Court]: Are you a citizen of the United States?

[Appellant]:     Yes, a green card.

[Trial Court]:   Okay, a green card means you have permission to live here. It does not mean you are a citizen. So you're currently here legally on a green card, correct?

[Appellant]:     Yes, sir.

[Trial Court]:   But you are not a citizen of the United States at this point, correct?

[Appellant]:     Yes, sir.

[Trial Court]:   You understand that if you are not a citizen entering today's plea could result in deportation, exclude you from admission to this country or denial of naturalization under federal law?

[Appellant]:     Yes, sir.

[Trial Court]:   Knowing that do you still wish to proceed in your plea at this time?

[Defendant]:     Yes, sir.

[Trial Court]:   To the offense of debit card abuse as alleged in the indictment how do you plead, guilty, not guilty or no contest?

[Appellant]:     Guilty.

[Trial Court]:   Are you pleading guilty because you are guilty and for no other reason?

[Appellant]:     Yes.

[Trial Court]:   Has anybody promised you anything or put any pressure on you in order to get you to enter your plea in this case? Other than the terms of the plea

|                  | agreement, has anybody promised you anything in order to get you to do this plea in this case? |
|------------------|------------------------------------------------------------------|
| [Appellant]:     | No.                                                              |
| [Trial Court]:   | Has anybody threatened you in any way to get you to do the plea in this case? |
| [Appellant]:     | No.                                                             |
| [Trial Court]:   | Are you pleading guilty freely and voluntarily? This is your decision. |
| [Appellant]:     | It's my decision, yeah.                                          |
| [Trial Court]:   | Nobody is making it for you and forcing you to do this? |
| [Appellant]:     | No.                                                             |

During the habeas hearing, counsel testified that it was not uncommon for clients to be nervous or not understand a question and to deliver the wrong answer to a "yes or no" question. Counsel explained that he was not concerned when appellant answered "yes" to the trial court's question about whether he was a United States citizen because some people believe they are a United States citizen if they have a green card or some other status. We find no abuse of discretion.

Appellant claims his answer to the trial court's question, whether he was a citizen, stating, "Yes, a green card," demonstrates he did not understand he was not a citizen and therefore, he could not have been properly advised of the immigration consequences. The analysis appellant would have us perform would transform the citizenship question into an immigration law test for guilty pleading criminal

defendants with no room for error. It is not that. To the contrary, the question, though unnecessary because code of criminal procedure article 26.13(a)(4) requires the admonishment regardless of the defendant's citizenship status, is designed to give the trial court the information it feels it needs to properly advise the defendant.[3] And in any event, appellant's answer gave the indication he understood his status was as a green card holder. His answers to the court's further clarifying questions demonstrated appellant understood he was not a citizen and that he held a green card.

Further, we cannot connect the chain of inferences appellant requests to conclude counsel provided ineffective assistance when he and appellant spoke English in each meeting they had. We cannot conclude appellant required an interpreter when the only indication he gave was that he understood the trial court's questions. He confirmed he did, he answered appropriately, and in the two instances when he gave answers that led to clarifying questions, his answers comported with the apparent truth of the matter in both instances. When asked whose decision it was to plead guilty, appellant crafted the phrase, "It's my decision, yeah" in response. We do not find ineffective assistance of counsel based on appellant's claimed lack of understanding.

---

[3] The best practice for a trial court is simply to omit the question and give the immigration consequences advice to every defendant. In describing practices judges should avoid post-*Padilla*, the Immigrant Defense Project suggests to judges: "Do not ask defendants or defense counsel about the defendant's immigration or citizenship status. Such an inquiry is neither necessary nor advisable at the arraignment or plea stage of a criminal proceeding, and may raise concerns about potential constitutional, statutory[,] and ethical violations." Judicial Obligations After *Padilla v. Kentucky*, at 32, available at https://immigrantdefenseproject.org/wp-content/uploads/2011/05/postpadillaFINALnew.pdf (Immigrant Defense Project and New York University School of Law Immigrant Rights Clinic, October 2011).

In a similar vein, appellant claims that he could not understand the plea proceedings without an interpreter and that it is "unclear whether Mr. Doke understood anything during the plea at all." If a defendant does not speak the English language, the defendant has both a constitutional and a statutory right to an interpreter. *See Baltierra v. State*, 586 S.W.2d 553, 559 (Tex. Crim. App. 1979) (op. on reh'g); *Joung Youn Kim v. State*, 331 S.W.3d 156, 162 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); TEX. CODE CRIM. PROC. art. 38.30(a). Failure to request an interpreter when one is necessary for the defendant to understand the proceedings constitutes ineffective assistance of counsel. *See Ex parte Cockrell*, 424 S.W.3d 543, 543 (Tex. Crim. App. 2014).

As noted, counsel testified he had no trouble communicating with appellant in English and that they always spoke in English to one another. Counsel recalled appellant had brought someone with him to their initial meeting and that appellant speaks with an accent, but counsel could not remember if the friend translated anything. Appellant and Nambouri said Nambouri was at the initial meeting to translate because appellant didn't understand English very well at the time. Counsel recalled someone being at the first meeting but did not recall the man acting as an interpreter. Counsel testified he met with appellant three times and said appellant did not bring anyone to their subsequent meetings. Counsel said it would have been easy to procure an interpreter at no cost but he did not because "[t]here was never an issue of he and I communicating in the English language." Counsel testified appellant

never said anything to him about not being able to read English and that he first learned appellant was illiterate when he reviewed the writ application. Counsel opined that appellant understood the immigration consequences of the plea.

Appellant said counsel just told him to answer yes to every question the judge asked during the plea colloquy, though counsel testified he did not tell appellant that and that he tells clients to listen to the trial court's questions to ensure they understand everything, that they actually want to move forward and resolve the case, and that they understand the immigration issues. Only if the client still wants to move forward will counsel proceed with the plea hearing.

The trial court found counsel's testimony credible, appellant's and Nambouri's affidavits not credible, and appellant's other two friends' affidavits, even if true in relaying that he was illiterate and would never steal, not dispositive of any issue because appellant had not shown his inability to read and write affected his ability to understand the plea proceedings and the immigration consequences of the plea. Citing counsel's testimony, the trial court found counsel had no issues communicating with appellant and no reason to request an interpreter for the plea hearing. The trial court found that counsel had elicited from appellant that appellant spoke French as his native language and was from Togo.[4] The trial court found

_____

[4] At the conclusion of the plea hearing, counsel and appellant engaged in the following exchange:

[Counsel]:     Your Honor, just for clarification, Mr. Doke, your—you're not a native English speaker; is that correct?

counsel asked appellant if he understood "each and every word" and the questions the trial court had asked and appellant replied that he did. The trial court found appellant had (1) not provided credible evidence that he failed to understand the questions asked during the plea hearing and (2) failed to prove by a preponderance of the evidence that counsel deficiently performed in coming to his professional opinion that an interpreter was not needed for the plea hearing.

We conclude the record supports the trial court's findings that appellant understood the proceedings and did not require an interpreter, and we can discern no abuse of discretion. *See Torres*, 483 S.W.3d at 42 (requiring appellate court to defer to trial court findings when supported by the record); *see also Hernandez v. State*, 986 S.W.2d 817, 822 (Tex. App.—Austin 1999, pet. ref'd) (German-speaking defendant did not establish guilty plea was involuntary for inability to understand proceedings where record showed she spoke some English, trial counsel testified he believed defendant understood what he was saying during extensive conversation on date of plea, and record showed only one question during plea proceeding defendant did not understand and required an explanation of before continuing); *Cantu v. State*, 716 S.W.2d 688, 690 (Tex. App.—Corpus Christi 1988, no pet.) (fact that defendant

---

| [Appellant]: | Yes. |
| [Counsel]: | You're originally from Togo? |
| [Appellant]: | Togo. |
| [Counsel]: | And you speak French? |
| [Appellant]: | Yes. |

–12–

is more fluent in language other than English and misunderstood question but was able to answer in English after the question was explained does not establish need for interpreter).

Appellant also claims counsel inconsistently advised him as to the immigration consequences of conviction. He highlights counsel's hearing testimony, where counsel, responding to a question about what he said at his very first meeting with appellant, testified he told appellant he needed to consult an immigration attorney because he "could possibly be subject to deportation or denial of residency." Counsel testified his practice was to advise clients with potential immigration consequences like appellant's—and that he advised appellant—it was not a matter of "if" but "when" he would be deported.

According to appellant and Nambouri, counsel had told him not to worry, that he had handled many cases like his, and that all appellant had to do was say "yes" to each question the trial court asked him. Appellant recalled that counsel told him the offense was minor and he could expunge his record after pleading guilty, and that counsel did not mention any other consequences.

The record shows, and the trial court found, that appellant told counsel he had a green card and that "Counsel told [appellant] that he would be deported, and that it was his policy to tell his clients that it was a matter of when, not if, he would be deported." After reciting in its findings its own plea hearing admonitions to appellant, the trial court concluded (1) the record did not support appellant's claim

–13–

that he did not understand the immigration consequences of his plea, (2) counsel explained the immigration consequences of the plea to him, and (3) appellant had failed to prove by a preponderance of the evidence that counsel's advice was deficient.

We are aware of *Padilla*'s strict terms. *See Padilla*, 559 U.S. at 369; *Torres*, 483 S.W.3d at 45 (counsel deficiently performed by advising client facing mandatory deportation that he might possibly be deported and suggesting he seek advice from immigration counsel). But we cannot conclude a lawyer is ineffective when the evidence of shifting advice comes from an initial client meeting where the lawyer says a client "could possibly" be subject to deportation, denial of residency, or removal from the United States, and the lawyer later specifically and repeatedly tells the client in no uncertain terms that he will be subject to those consequences even if the judge gives the client deferred adjudication. This is correct advice that is as clear as it is that federal law imposes removal on a green card holder placed on deferred adjudication for Texas state law credit card abuse. *See Padilla*, 559 U.S. at 369.

Moreover, there was conflicting record evidence regarding appellant's claim that counsel minimized the consequences of conviction, failed to advise him of the immigration consequences, and failed to understand the plea proceedings. Thus, we conclude the trial court did not abuse its discretion by not finding deficient performance. *See id.*; *Rios v. State*, 377 S.W.3d 131, 138 (Tex. App.—Houston [1st

–14–

Dist.] 2012, pet. ref'd) (no abuse of discretion when trial court makes decision based on conflicting evidence); *see also Aranda v. State*, 736 S.W.2d 702, 705 (Tex. Crim. App. 1987) (en banc) (same).

*    *    *

Because we conclude the trial court did not abuse its discretion in finding no deficient performance, we do not consider prejudice. We affirm the trial court's order denying relief on appellant's post-conviction application for writ of habeas corpus.

/Cory L. Carlyle//
CORY L. CARLYLE
JUSTICE

200826f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE KOFFI SEMEGNON DOKE

No. 05-20-00826-CR

On Appeal from the 366th Judicial District Court, Collin County, Texas Trial Court Cause No. 366-80876-2013.
Opinion delivered by Justice Carlyle. Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the order of the trial court denying relief on appellant's application for writ of habeas corpus is **AFFIRMED**.

Judgment entered this 7th day of September, 2021.